**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GUEVOURA FUND LTD., On Behalf of Itself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ROBERT F.X. SILLERMAN, D. GEOFFREY ARMSTRONG, JOHN MILLER and MICHAEL JOHN MEYER, <br><br> Defendants. | **Case No. 1:15-cv-07192-CM** <br><br> **Case No. 1:18-cv-09784-CM** |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR: (1) PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT; (2) APPROVAL OF NOTICE TO THE CLASS; AND (3) SCHEDULING OF A FINAL APPROVAL HEARING**

**BROWER PIVEN**
  A Professional Corporation
David A.P. Brower
136 Madison Avenue, 5th Floor
New York, New York 10016
Telephone: (212) 501-9000
Facsimile: (212) 501-0300
Email: brower@browerpiven.com

*Counsel for Lead Plaintiff and the Class*

## TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ...................................................................................... 1

II.  FACTUAL BACKGROUND ....................................................................................... 3

    A.  Background of the Litigation .............................................................................. 3

    B.  The Settlement Results From Extensive Negotiations.............................................6

III.  ARGUMENT ........................................................................................................... 7

    A.  The Proposed Settlement Warrants Preliminary Approval ................................... 7

        1.  The Class Representative and Lead Counsel Have Adequately Represented the Class ................................................. 9

        2.  The Proposed Settlement Was Negotiated At Arm's-Length ........................................................................... 10

        3.  The Relief Provided For the Class Is Adequate and Merits Issuance of Notice and a Hearing on Final Approval ...................................................................... 11

        4.  The Proposed Plan of Allocation Treats Class Members Equitably ....................................................................... 14

IV.  THE FORM AND MANNER OF THE NOTICE TO THE CLASS SHOULD BE APPROVED ........................................................................... 14

V.  CONCLUSION ....................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

### CASES

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) .................................................. 9

*In re Currency Conversion Fee Antitrust Litig.*, MDL Nos. 1409, M 21-95,
    2006 U.S. Dist. LEXIS 81440 (S.D.N.Y. Nov. 8, 2006) ................................................7

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483
    (E.D. Mich. 2008) ......................................................................................... 10

*In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79 (S.D.N.Y. 2007) ....................................... 9

*In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186 (S.D.N.Y. 2005) .................................... 8

*Leung v. Home Boy Rest. Inc.*, No. 07 Civ. 8779 (RJS) (DFE),
    2009 U.S. Dist. LEXIS 12556 (S.D.N.Y. Feb. 18, 2009) ............................................... 10

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK),
    2007 U.S. Dist. LEXIS 93423 (S.D.N.Y. Dec. 20, 2007) ................................................ 11

*In re NASDAQ Market-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ................................................................... 7, 9

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ............................................................. 7, 9, 14

*Torres v. Gristede's Operating Corp.*, No. 04-cv-3316 (PAC),
    2010 U.S. Dist. LEXIS 75362 (S.D.N.Y. June 1, 2010) ................................................. 8

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ............................. 7, 10, 16

*In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515,
    2008 U.S. Dist. LEXIS 99840 (S.D.N.Y. Nov. 20, 2008) ............................................... 17

*In re Wells Fargo Mortg-Backed Certificates Litig.*, No. 09-CV-1376-LHK (PSG),
    2011 U.S. Dist. LEXIS 131788 (N.D. Cal. Nov. 14, 2011) .......................................... 10

### STATUTES AND RULES

15 U.S.C.S. § 78u-4 ............................................................................................*passim*

11 U.S.C. § 362.................................................................................................... 4

Fᴇᴅ. R. Cɪv. P. 23 ............................................................................................... *passim*

## MISCELLANEOUS

Mᴀɴᴜᴀʟ Fᴏʀ Cᴏᴍᴘʟᴇx Lɪᴛɪɢᴀᴛɪᴏɴ (4th ed.) § 13.14 ................................................. 8

Lead Plaintiff Guevoura Fund Ltd. ("Lead Plaintiff")[1] respectfully submits this memorandum of law in support of its motion ("Motion"), pursuant to FED. R. CIV. P. 23(e), for authorization to provide notice of the proposed settlement with Defendants Robert F.X. Sillerman ("Sillerman"), D. Geoffrey Armstrong, Michael John Meyer, and John Miller (collectively, the "Director Defendants"), and to schedule a hearing for approval of the proposed Settlement, approval of the proposed Plan of Allocation and consideration of Lead Counsel's application for an award of attorneys' fees and reimbursement of litigation expenses.[2]

Specifically, through this Motion, Lead Plaintiff respectfully request that this Court: (1) preliminarily approve the Settlement; (2) approve the form and manner of giving notice of the Settlement to the Class; and (3) schedule a hearing for final approval of the Settlement, the Plan of Allocation that will govern how Class Members' claims are calculated and the Net Settlement Fund is distributed, and Lead Counsel's motion for an award of attorneys' fees and litigation expenses (the "Settlement Hearing").

## I.     PRELIMINARY STATEMENT

Lead Plaintiff and the Director Defendants (the "Parties") have reached an agreement to settle this securities class action on the terms set forth in the Stipulation. The proposed Settlement will provide a substantial monetary benefit to the Class of $6.75 million as part of the

---

[1] On December 8, 2015, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the District Court consolidated the two pending actions alleging similar claims, appointed Guevoura Fund Ltd. as Lead Plaintiff, and approved Lead Plaintiff's selection of Brower Piven as Lead Counsel. Dkt. No. 60.  Further, on February 4, 2019, the District Court certified the Class, appointed Lead Plaintiff as the Class representative and Brower Piven as Class Counsel.  Dkt. No. 164.  Lead Plaintiff, herein, also requests that the Class definition be amended, as provided in the proposed Order Granting Preliminary Approval of Proposed Settlement and Providing for Notice to the Class ("Preliminary Approval Order"), submitted with the Motion (and as Exhibit A to the Stipulation, defined below).

[2] Capitalized terms not defined herein are as stated in the Stipulation and Agreement of Settlement, dated April 30, 2019 ("Stipulation"), attached to the Motion as Exhibit 1. Internal citations omitted unless otherwise noted.

Director Defendants' Contribution, and a $750,000 Sillerman Contribution, as described in the Stipulation.  The Settlement, if approved, will resolve all claims asserted against the Director Defendants in this Action.

This case has a long and tortured history.  The Settlement is the culmination of almost three and a half years of litigation, and was reached at a time when the Parties understood the strengths and weaknesses of their respective positions. Specifically, Lead Counsel conducted an extensive investigation into the claims, filed a detailed consolidated complaint, survived motions to dismiss, and conducted discovery.  Lead Counsel reviewed thousands of pages of publicly available documents, including, among other things, U.S. Securities & Exchange Commission and other regulatory filings, media reports, and analyst reports.  Lead Counsel also engaged in extension consultations with their economics, financial and damages consultants before, during and after the various negotiation sessions that led to the proposed Settlement, as well as during the class certification briefing.  Further, besides requesting and receiving documents from various SFX Entertainment, Inc. ("SFX") entities and the Director Defendants, Lead Counsel also subpoenaed nine third-parties for documents and began a review of the hundreds of thousands of pages of documents that were provided.

The Parties also engaged in extensive arm's-length settlement negotiations and participated in a mediation on April 18, 2017 under the supervision of the Honorable Layn R. Phillips (Ret.), an experienced and highly regarded mediator.  Additionally, the Parties participated in a settlement conference with Magistrate Judge Ona T. Wang on February 25, 2019.  On March 12, 2019, the Parties reached the global settlement, which is fully detailed in the Stipulation.  Lead Plaintiff and Lead Counsel – based upon their evaluation of the facts and applicable law and their recognition of the substantial risk and expense of continued litigation – submit that the proposed Settlement is in the best interests of the Class and will provide an

immediate meaningful recovery for the Class.

Prior to the Settlement Hearing, Lead Plaintiff will submit detailed papers supporting the proposed Settlement and will ask the District Court to determine whether the Settlement is fair, reasonable, and adequate.  At this time, however, Lead Plaintiff requests only that the Court grant preliminary approval of the Settlement, so that notice may be provided to the Class. Specifically, Lead Plaintiff requests that the Court enter the proposed Preliminary Approval Order, which, among other things, will: (i) amend the Class definition; (ii) preliminarily approve the Settlement; (iii) approve the form and content of the Notice, Publication Notice and Proof of Claim, attached as Exhibits A-1, A-2, and A-3 to the Stipulation; and (iv) schedule the Settlement Hearing and set a schedule and procedures for settlement-related events, including: disseminating the notices; requesting exclusion; objecting to the Settlement; and submitting papers in support of final approval of the Settlement.

In short, given the immediate and substantial total benefit of the Settlement and the risks in establishing the Director Defendants' liability and proving damages for the entire Class, Lead Plaintiff respectfully submits that the Settlement is not only fair, reasonable, and adequate, but represents an outstanding recovery, as described below and as will be demonstrated in connection with seeking final approval of the Settlement.

## II.     FACTUAL BACKGROUND

### A.     Background of the Litigation

The initial complaint in the Action was filed on September 11, 2015.  On December 8, 2015, pursuant to the PSLRA, the District Court consolidated the two pending actions alleging similar claims, appointed Guevoura Fund Ltd. as Lead Plaintiff, and approved Lead Plaintiff's selection of Brower Piven as Lead Counsel.  Dkt. No. 60.

On December 23, 2015, Lead Plaintiff filed a Consolidated Amended Class Action Complaint (the "Complaint"), which is the operative pleading.  Dkt. No. 61.  The Complaint asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder.  The Complaint alleges that, during the Class Period, the Director Defendants engaged in a scheme to manipulate the market for SFX common stock in connection with purported proposals by Defendant Sillerman to buy SFX, and by issuing materially false and misleading statements in furtherance of that illicit scheme.

Following extensive briefing on the Director Defendants' motions to dismiss the Complaint, by Memorandum Decision and Order filed on September 12, 2016, the District Court denied, in their entirety, the Director Defendants' motions to dismiss the Complaint.  Dkt. No. 104.  On February 1, 2016, SFX filed a petition for bankruptcy protection under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, Dkt. No. 88, and on February 2, 2016, the District Court entered a memo endorsement with respect to SFX's suggestion of bankruptcy acknowledging that all proceedings against SFX were stayed pursuant to 11 U.S.C. § 362.  Dkt. No. 90.  The Director Defendants answered the Complaint on October 26, 2019, denying all allegations of wrongdoing and asserting defenses to Lead Plaintiff's claims.  Dkt. Nos. 107, 108.

On December 26, 2017, certain creditors filed an involuntary petition under Chapter 7 of the Bankruptcy Code against Defendant Sillerman in the Bankruptcy Court.  *See* No. 1:18-cv-09784-CM docket, Dkt. No. 1 at ¶14.  On February 2, 2018, Defendant Sillerman filed a motion to convert the involuntary Chapter 7 case to a voluntary Chapter 11 case, which was granted on March 1, 2018.  *Id.*

On September 25, 2018, Lead Plaintiff filed proofs of claim in the Sillerman Bankruptcy Proceeding on behalf of itself and the Class.  On June 19, 2018, Lead Plaintiff timely filed the

Non-Dischargeability Action in the Sillerman Bankruptcy Proceeding. *See* No. 1:18-cv-09784-CM docket, Dkt. No. 1 at ¶17. On October 24, 2018, Lead Plaintiff filed a motion in the District Court to withdraw the bankruptcy reference with regard to the Non-Dischargeability Action, which Defendant Sillerman opposed. *See id.* On October 30, 2018, Defendant Sillerman filed an answer to the complaint in the Non-Dischargeability Action denying all allegations of wrongdoing and asserting defenses to Lead Plaintiff's claims asserted on behalf of itself and the Class. On December 3, 2018, the Court granted Lead Plaintiff's motion to withdraw the bankruptcy reference in the Non-Dischargeability Action. *See id.* at Dkt. No. 15. Following a conference with the Court on December 20, 2018, on December 21, 2018, the Court entered an order consolidating the Action and the Non-Dischargeability Action, and set a pretrial schedule that contemplated trial of both actions in September 2019. Dkt. No. 137 ("Scheduling Order").

Following expedited class discovery, including Lead Plaintiff's document production, submission of its market expert's report, and the deposition of its representative, on February 4, 2019, by stipulation of the Parties, the Court certified the Class, appointed Lead Plaintiff as the Class representative and Brower Piven as Class Counsel. Dkt. No. 164.

Lead Plaintiff, through Lead Counsel, conducted an in-depth investigation of the claims and underlying events relating to the Action. This investigation included, among other things, the review and analysis of thousands of pages of publicly available information concerning the SFX and the Director Defendants, including articles and online publications; regulatory filings made by SFX with the SEC; and securities analyst reports. Further, in addition to requesting and receiving thousands of pages of documents from various SFX entities and the Director Defendants, Lead Counsel also subpoenaed nine third-parties for relevant documents, met and conferred with representatives of the third-parties, and began to review the over half a million of pages of documents provided in total. Further, Lead Plaintiff also consulted with experts and/or

consultants during class certification, and also about the calculation of the potential amounts of recoverable damages at various points during the Class Period, as well as issues concerning loss causation and the Director Defendants' potential defenses to Lead Plaintiff's class-wide damages estimates.

On June 26, 2019, the Bankruptcy Court in the Sillerman Bankruptcy Proceeding entered an Order, upon a motion of Defendant Sillerman and pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, authorizing Defendant Sillerman to give the releases set forth in Stipulation as to the Released Defendants' Claims, to give releases in favor of the Insurance Carriers, to take all actions necessary to effectuate the transactions contemplated by the Settlement, and to make the Sillerman Contribution.

**B.     The Settlement Results From Extensive Negotiations**

The Settlement is the result of arm's-length discussions and negotiations that started in 2017, and included lengthy good faith, arms'-length mediations before the Honorable Layn R. Phillips (ret.) and the Honorable Magistrate Judge Ona T. Wang, as well as extensive and vigorous additional one-on-one negotiations.

Following preliminary settlement discussions, Lead Plaintiff and the Director Defendants (and the SFX Litigation Trustee and the Opt-Out Plaintiffs) engaged in mediation before Judge Phillips on April 18, 2017. The Parties exchanged detailed mediation statements setting forth their respective positions on liability and damages.  However, no resolution was reached.  After the mediation, the Parties continued to work with Judge Phillips to seek a resolution. Although the Parties were close to a resolution, their efforts ended when certain creditors filed the involuntary petition under Chapter 7 of the Bankruptcy Code.  Given Defendant Sillerman's contribution was a *sine qua non* of the preliminary settlement reached, his bankruptcy made further negotiation of the allocation of the preliminary settlement futile.

On February 25, 2019, the same parties participated in a settlement conference with Magistrate Judge Ona T. Wang, but did not reach a resolution. The parties had a number of telephone calls and electronic communications over the course of the next two weeks concerning a possible settlement. On March 12, 2019, the parties reached the global settlement, which included settlements with the SFX Litigation Trustee and the Opt-Out Plaintiffs, as discussed in the Stipulation.   After the parties reached an agreement-in-principle to settle the Action, the parties negotiated the specific terms of the Settlement, as set forth in the Stipulation and related exhibits.

## III.   ARGUMENT

### A.   The Proposed Settlement Warrants Preliminary Approval

Rule 23(e) requires judicial approval for any compromise of claims brought on a class basis. Approval of a proposed settlement is within the court's discretion, to be exercised in accordance with public policy that strongly favors pretrial settlement of complex class action lawsuits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy."); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").

The court "must determine whether the terms of the proposed settlement warrant preliminary approval [by] mak[ing] 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate." *In re Currency Conversion Fee Antitrust Litig.*, MDL Nos. 1409, M 21-95, 2006 U.S. Dist. LEXIS 81440, at *13 (S.D.N.Y. Nov. 8, 2006); *see also Wal-Mart*, 396 F.3d at 116; *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y.

1997); *see also Torres v. Gristede's Operating Corp.*, No. 04-cv-3316 (PAC), 2010 U.S. Dist. LEXIS 75362, at *10-*11 (S.D.N.Y. June 1, 2010) ("[p]reliminary approval of a settlement agreement requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties"; "[t]o grant preliminary approval, the court need only find that there is 'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness.'"). The amended Rule 23(e)(2) requires the court, in considering whether the settlement is fair, reasonable and adequate, to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3)[3]; and
> (D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2)

"Review of a proposed class action settlement generally involves a two-step process: preliminary approval and a 'fairness hearing.' First, the court reviews the proposed terms of settlement and makes a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms." *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005); *see also* MANUAL FOR COMPLEX LITIGATION (4th ed.) §13.14. During this first step, a court must consider whether the settlement warrants preliminary approval, such that notice of the settlement should be sent to the proposed class and a fairness hearing held. In the second step, after notice of the proposed settlement has been provided to the class and a hearing has been held

to consider the fairness and adequacy of the proposed settlement, the Court considers whether

the settlement warrants "final approval." *Id*.[4]

> In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice. Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted. Once preliminary approval is bestowed, the second step of the process ensues. . . .

*NASDAQ*, 176 F.R.D. at 102; *see also In re Initial Pub. Offering Sec. Litig*., 243 F.R.D. 79, 87

(S.D.N.Y. 2007).

In essence, the court should determine whether the settlement is "at least sufficiently fair,

reasonable and adequate to justify notice to those affected and an opportunity to be heard."

*NASDAQ*, 176 F.R.D. at 102; *Prudential*, 163 F.R.D. at 209 ("The Court's function now is to

ascertain whether there is any reason to notify the class members of the proposed settlement and

to proceed with a fairness hearing.").

### 1.    The Class Representative and Lead Counsel Have Adequately Represented the Class

Here, Lead Plaintiff had no interests or goals in the prosecution of its claims against the

Director Defendants that differed from those of all other Class members.   Lead Plaintiff had

clearly established its adequacy, through the deposition testimony of Jeremy Boujnah ("Mr.

---

[3] All agreements related to the Settlement are detailed in the Stipulation.

[4] A final approval determination is based on an analysis of nine factors established in *City of Detroit v. Grinnell Corp*., 495 F.2d 448, 463 (2d Cir. 1974). The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of the attendant risks of litigation. *Id*.

Boujnah"), director of Guevoura Fund, under questioning by the Director Defendants' counsel. Guevoura Fund and Mr. Boujnah, as a representative of Lead Plaintiff, fully understood the obligations of a class representative – obligations that have been fulfilled. *See also* Dkt. No. 9-11 (detailing Mr. Boujnah's testimony).

Lead Plaintiff also retained counsel highly experienced in securities litigation. Brower Piven has served as lead counsel on numerous complex class actions in federal and state courts across the country, and has won substantial recoveries for classes the firm has represented. In light of the foregoing, the Class was well-represented by Lead Plaintiff and its counsel.

## 2. The Proposed Settlement Was Negotiated At Arm's-Length

A presumption of fairness applies to a proposed class settlement when the settlement is the product of arm's-length negotiations conducted by experienced counsel knowledgeable in complex class litigation. *Wal-Mart*, 396 F.3d at 116; *see also Leung v. Home Boy Rest. Inc*., No. 07 Civ. 8779 (RJS) (DFE), 2009 U.S. Dist. LEXIS 12556, at *2 (S.D.N.Y. Feb. 18, 2009). In this case, the Settlement is the product of such rigorous negotiations. The Parties took part in extension back-and-forth negotiations, as well as in a mediation before Judge Phillips, a mediator with extensive experience who has assisted in numerous other complex class action mediations. *See, e.g.*, *In re Wells Fargo Mortg-Backed Certificates Litig.*, No. 09-CV-1376-LHK(PSG), 2011 U.S. Dist. LEXIS 131788 (N.D. Cal. Nov. 14, 2011); *see also In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008) (speaking of Judge Phillips, "the Court and the parties have had the added benefit of the insight and considerable talents of a former federal judge who is one of the most prominent and highly skilled mediators of complex actions, who acted as Special Master in the settlement negotiations."). Moreover, the Parties participated in a settlement conference with Judge Ona T. Wang.

Lead Counsel's investigation into the facts and merits of the claims and defenses further

supports a finding that the process leading to the proposed Settlement was thorough and well-informed. Lead Counsel did an extensive review of publicly available information concerning the Director Defendants and the claims asserted, including articles, online publications, SEC filings, and analyst reports. Lead Counsel thoroughly researched Lead Plaintiff's legal claims, filed a consolidated complaint, engaged in discovery, and consulted with a damages consultant. Thus, Lead Counsel and Lead Plaintiff had a clear and well-developed understanding of the strengths and weaknesses of their case before entering into negotiations and agreeing to the proposed Settlement.

### 3. The Relief Provided For the Class Is Adequate and Merits Issuance of Notice and a Hearing on Final Approval

Although Lead Plaintiff and Lead Counsel believe that the claims asserted in the Action are meritorious and that the Class would ultimately prevail at trial, continued litigation against the Director Defendants posed considerable risks and delays that made any recovery for the Class uncertain. The fairness and adequacy of the Settlement is underscored by consideration of the obstacles that the Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the Action, including trial and appeals. *In re Merrill Lynch & Co., Inc. Res. Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 93423, at *27-*29 (S.D.N.Y. Dec. 20, 2007).

If the Action had continued, Lead Plaintiff faced substantial challenges in later stages of litigation in proving that the Director Defendants made false material misrepresentations or omitted to disclose material information in connection with Defendant Sillerman's offers in violation of the Exchange Act.  Indeed, the Director Defendants argued that the Complaint only alleges that the Director Defendants, acting as a Special Committee, made a single alleged false statement to investors – that they unanimously determined that the transaction was fair to the

Company's stockholders, and because the Complaint fails to allege that any particular director "prepared any securities filing, made any public announcement, or otherwise disclosed any information to investors – as opposed to the Special Committee's alleged recommendation made 'to the Board,'" Lead Plaintiff fails to meet its burden to demonstrate a false statement. *See* Dkt. No. 69 at 5.  It was also further argued that the Complaint "is entirely devoid of allegations that the Outside Directors acted with scienter." *Id.* at 8.  The Directors Defendants also argued that discovery would show that the Directors Defendants reasonably relied on expert advice in evaluating Defendant Sillerman's offers.  Further, there is no doubt that both sides would have had to present complex and nuanced information to a jury that would include a "battle of the experts" on complex issues surrounding securities disclosure requirements and damages calculations, which the Parties did not agree on.

Moreover, the directors' and officers' ("D&O") insurance coverage is a wasting asset as it pays legal fees of the Director Defendants, as well as providing coverage for the claims asserted in the Action.  By continuing with the fast-paced schedule set by the District Court, each day that the Action was not settled would take away money available for the Class for settlement.  For example, according to the Scheduling Order, depositions would have had to have started in March, as Lead Plaintiff had to depose ten witnesses before May 17, 2019; Lead Plaintiff would have had to produce expert reports by April 5, 2019; the Director Defendants had to depose experts from May 20, 2019 until June 5, 2019; the Director Defendants had to produce export reports by April 19, 2019; and Lead Plaintiff would have to depose the Director Defendants' experts between May 20, 2019 and June 5, 2019.  Scheduling Order at 3.  Moreover, the Action was complicated by the fact that SFX was in bankruptcy, and Defendant Sillerman is still in bankruptcy.

These were but a few of the unique hurdles that Lead Plaintiff would have needed to

overcome to obtain a recovery for the Class.[5] When considering the Settlement, Lead Counsel weighed the certainty of an immediate cash recovery for the Class against the significant legal challenges Lead Plaintiff faced and the wasting insurance coverage. There can be no doubt that because the Action is settling at this time, the litigants have been spared the delay and expense of continued litigation. Indeed, conducting further discovery, by itself, would be complex, lengthy and certainly expensive. Many months of the parties' (and the District Court's) time and significant resources have been spared.

Lead Plaintiff have obtained a Settlement that, based on their damages consultants' estimates, taking into account the factual risks to proving the existence of claims of Class Members, generally accepted principles of loss causation, and the statutory measures of damages permitted under Sections 10(b) and 20(a) of the Exchange Act of 1934, will result, before attorneys' fees and expenses, in participating Class Members recovering approximately 63% of the estimated likely recoverable damages if the Sillerman Contribution is paid and 57% if the Sillerman Contribution is not paid. Under these circumstances, the proposed Settlement is not only fair, reasonable, and adequate, but a remarkable result.

Additionally, the proposed method of distributing relief to the Class, including the method of processing Class Members' claims is adequate and presents no unusual issues or problems. The administration is planned and will be executed like hundreds (if not thousands) before it in similar federal securities cases. Lead Counsel is highly experienced in the administration of securities class action settlements. Lead Counsel has also retained a leading claims administration firm in the country, which has decades of experience administering and processing claims in settlements of cases of this type as well as far more complex settlements.

---

[5] At the time Lead Counsel presents its motion for final approval of the Settlement, Lead Counsel will discuss other unique risks that this Action entailed and provide additional detail on

Claims will be processed based on reliable documentary evidence submitted, and calculated in accordance with the Plan of Allocation.

Finally, the matter of attorneys' fees and payment of expenses is wholly separate from the Settlement and subject to the Court's oversight and approval during the Final Approval Hearing – after the appropriate briefing by Lead Counsel and an opportunity for Class Members to properly and adequately review.

### 4.      The Proposed Plan of Allocation Treats Class Members Equitably

There are no "grounds to doubt [the Settlement's] fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys." *Prudential*, 163 F.R.D. at 209. Lead Plaintiff, like all other Class Members, will receive their pro rata distribution from the Net Settlement Fund in accordance with a Plan of Allocation that will be presented to the Court for approval.

*      *      *

Accordingly, nothing in the course of this Action, the settlement negotiations, or the Settlement itself raises fairness concerns. Lead Plaintiff therefore requests that the District Court preliminarily approve the Settlement and set a hearing date for consideration of final approval of the Settlement.

## IV.   THE FORM AND MANNER OF THE NOTICE TO THE CLASS SHOULD BE APPROVED

Rule 23(e)(1) requires that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal" (i.e., the proposed Settlement).  Here, the Parties negotiated the form of the Notice to be disseminated to all persons who fall within the definition of the Class and whose names and addresses can be identified with reasonable effort

---

all of those risks confronting Lead Plaintiff's success on the merits.

from or through SFX's records. In addition, the Claims Administrator will send the Notice to entities that commonly hold securities in "street name" as nominees for the benefit of their customers who are the beneficial purchasers of the ordinary shares. The Parties further propose to supplement the mailed Notice with a Publication Notice transmitted three separate times over *PR Newswire* or a similar national business oriented newswire. The Notice and Publication Notice are attached to the Stipulation as Exhibits A-1 and A-2.

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." FED. R. CIV. P. 23(h)(1). Here, the Notice satisfies the requirements of Rule 23(h)(1), as it notifies Class Members that Lead Counsel will apply to the Court for an award of attorneys' fees of a reasonable percentage of the Settlement Fund not to exceed, in the aggregate, thirty-three and one third percent (33 1/3%) of the Director Defendants' Contribution and thirty-three and one third percent (33 1/3%) of the Sillerman Contribution, as further explained in the Notice and the Stipulation, plus reimbursement of Lead Counsel's reasonable out-of-pocket litigation expenses.

Furthermore, in securities class actions, the PSLRA requires the notice of settlement to include: (1) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis;" (2) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter, a statement from each settling party concerning the issue or issues on which the parties disagree;" (3) "a statement indicating which parties or counsel intend to make . . . an application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought;" (4) "[t]he name,

telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members;" and (5) "[a] brief statement explaining the reasons why the parties are proposing the settlement."

The proposed Notice describes the Settlement and sets forth the aggregate amount of the Settlement Fund and the estimated average recovery; states the Parties' disagreement over liability and damages; sets out the amount of attorneys' fees and expenses that Lead Counsel intend to seek in connection with final settlement approval; and describes the Plan of Allocation. In addition, the Notice explains the nature, history, and status of the Action; sets forth the definition of the Class, states the Class's claims and issues, discusses the rights of Persons and entities that fall within the definition of the Class, and summarizes the reasons the Parties are proposing the Settlement.

Further, for those Class Members who wish to participate in the Settlement, the Notice and the Proof of Claim provide instructions on the process for completing and submitting the Proof of Claim. The Notice also provides the name and mailing address for the Claims Administrator, Lead Counsel, and counsel for the Director Defendants. The Publication Notice further informs Class Members that copies of the Notice and Proof of Claim may be obtained by writing the Claims Administrator, or by accessing the documents on the website of the Claims Administrator. Finally, the Notice sets forth the date, time, and place of the Settlement Hearing, along with the procedures for objecting to or seeking exclusion from the Settlement.

Accordingly, the Notice and Publication Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114. The manner of providing notice, which includes individual notice by mail to all Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of

due process and Rule 23.  *See In re Warner Chilcott Ltd. Sec. Litig*., No. 06 Civ. 11515, 2008 U.S. Dist. LEXIS 99840, at *7-*8 (S.D.N.Y. Nov. 20, 2008).

## V.    CONCLUSION

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order that will: (i) amend the Class definition; (ii) preliminarily approve the Settlement; (iii) approve the form and manner of giving notice of the Settlement to the Class; and (iv) schedule a date and time for the Settlement Hearing to consider approval of the Settlement and related matters following an opportunity for Class Members to be heard.

Dated: July 18, 2019

**BROWER PIVEN**
   **A Professional Corporation**

*/s/ David A.P. Brower*
David A.P. Brower
136 Madison Avenue, 5thrd Floor
New York, NY 10016
T: (212) 501-9000
F: (212) 501-0300
Email: brower@browerpiven.com

***Counsel for Lead Plaintiff and the Class***

## CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2019, I served true and correct copies of the foregoing Lead Plaintiff's Memorandum of Law in Support of Motion for: (1) Preliminary Approval of Proposed Settlement; (2) Approval of Notice to the Class; and (3) Scheduling of a Final Approval Hearing by causing copies to be sent by the ECF system.

*/s/ David A.P. Brower*
David A.P. Brower