**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GUEVOURA FUND LTD., On Behalf of Itself and All Others Similarly Situated, | |
| Plaintiff, | **Case No. 1:15-cv-07192-CM** |
| v. | **Case No. 1:18-cv-09784-CM** |
| ROBERT F.X. SILLERMAN, D. GEOFFREY ARMSTRONG, JOHN MILLER and MICHAEL JOHN MEYER, | |
| Defendants. | |

## LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS NOTICE; FINAL APPROVAL OF THE PROPOSED SETTLEMENT; AND FINAL APPROVAL OF THE PROPOSED PLAN OF ALLOCATION

**BROWER PIVEN**
  A Professional Corporation
David A.P. Brower
136 Madison Avenue, 5th Floor
New York, New York 10016
Telephone: (212) 501-9000
Facsimile: (212) 501-0300
Email: brower@browerpiven.com


*Counsel for Lead Plaintiff and the Class*

## <u>TABLE OF CONTENTS</u>

I.    PRELIMINARY STATEMENT………………………………………………………..1

II.   HISTORY OF THE ACTION……………………………………………………….…..3

III.  NOTICE TO THE SETTLEMENT CLASS SATISFIED THE
      REQUIREMENTS OF THE PSLRA, FED. R. CIV. P. 23, AND DUE PROCESS……...3

      A.    Relevant Standards   ……………………………………………………………...3

      B.    The Notice Procedure Was Appropriate………………………………………… 6

      C.    The Content of the Notice Was Appropriate……………………………………6

            1.    The Standard Governing the Content of Class Notice…………………… 6

            2.    The Content of the Notice Here Was Appropriate………………….….... 8

IV.   THE SETTLEMENT MEETS THE REQUIREMENTS FOR FINAL APPROVAL…...11

      A.    The Law Favors and Encourages Settlements…………………………….........11

      B.    The Settlement is Fair, Reasonable and Adequate………………………………12

            1.    The Settlement is the Product of Arm's-Length Negotiation…………....13

            2.    The Complexity, Expense, and Likely Duration of the Litigation…....….16

            3.    The Reaction of the Class to the Settlement…………………………..…17

            4.    The Stage of the Proceedings and Discovery Completed………………..17

            5.    The Substantial Risks of Establishing Liability and Damages………..…18

            6.    The Risk of Maintaining the Class Action Through the Trial…………...20

            7.    The Ability of the Defendants to Withstand a Greater Judgment ……….21

            8.    The Reasonableness of the Settlement in Light of the Best Possible
                  Recovery and the Attendant Risks of Litigation…………………….....21

V.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE………………….....24

VI.   CONCLUSION……………………………………………………………………....25

# **TABLE OF AUTHORITIES**

## CASES

*In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740 (E.D.N.Y. 1984),
  *aff'd*, 818 F.2d 145 (2d Cir. 1987) ............................................................21

*In re AMF Bowling Sec. Litig.*, 334 F. Supp. 2d 462 (S.D.N.Y. 2004) ........................................15

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, MDL. No. 1500,
  2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006) .................................... *passim*

*In re Ashanti Goldfields Sec. Litig.*, No. CV-00-717 (DGT),
  2005 U.S. Dist. LEXIS 28431 (E.D.N.Y. Nov. 15, 2005) ........................................11

*Beecher v. Able, Inc.*, 575 F. 2d 1010 (2d Cir. 1978) ...................................................25

*In re Blech Sec. Litig.*, No. 94 Civ. 7696,
  2000 U.S. Dist. LEXIS 6920 (S.D.N.Y. May 19, 2000)........................................23

*In re Canadian Superior Sec. Litig.*, No. 09 Civ. 10087 (SAS),
  2011 U.S. Dist. LEXIS 132708 (S.D.N.Y. Nov. 16, 2011) ........................................14

*Cannon v. Texas Gulf Sulphur Co.*, 55 F.R.D. 308 (S.D.N.Y. 1972) ........................................... 6

*Charron v. Pinnacle Group NY LLC*, No. 07 Civ. 6316,
  2012 U.S. Dist. LEXIS 79550 (S.D.N.Y. June 6, 2012) ........................................ 3, 6

*Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209
  (S.D.N.Y. 1992) ............................................................................................15, 20

*In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB),
  2011 U.S. Dist. LEXIS 53007 (S.D.N.Y. May 13, 2011)........................................23

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)............................................ *passim*

*City of Providence v. Aéropostale, Inc.*, No. 11-7132,
  2014 U.S. Dist. LEXIS 64517 (S.D.N.Y. May 9, 2014)........................................23

*Curtiss-Wright Corp. v. Helfand*, 687 F. 2d 171 (7th Cir. 1982) ................................................. 25

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ........................................13, 15

*DeJulius v. New England Health Care Employees Pension Fund*,
   429 F.3d 935 (10th Cir. 2005) ..................................................... 4

*In re Drexel Burnham Lambert Group Inc.*, 130 B.R. 910
   (S.D.N.Y. Aug. 20, 1991), *aff'd*, 960 F.2d 285 (2d Cir. 1992) ...............................18

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ....................................... 4

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-10240 (CM),
   2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ..........................................14

*In re Flag Telecom Holdings*, No. 02-CV-3400 (CM) (PED),
   2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 5, 2010) .......................................22

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005)................................20

*In re Giant Interactive Grp., Inc.*, 279 F.R.D. 151 (S.D.N.Y. 2011)......................................22, 24

*Gilat Satellite Networks, Ltd.*, CV-02-1510 (CPS),
   2007 U.S. Dist. LEXIS 29062 (E.D.N.Y. Apr. 19, 2007)......................................16

*Girault v. Supersol*, No. 1:11 Civ. 6835 (PAE), 2012 U.S. Dist. LEXIS 89976
   (S.D.N.Y. June 28, 2012) .......................................................................4

*Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)............................ *passim*

*Handschu v. Special Servs. Div.*, 787 F.2d 828 (2d Cir. 1986) .................................. 6, 8

*Hayes v. Harmony Gold Mining Co.*, No. 08 Civ. 03653,
   2011 U.S. Dist. LEXIS 138543 (S.D.N.Y. Nov. 29, 2011) ....................................12

*In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM),
   2014 U.S. Dist. LEXIS 177175 (S.D.N.Y. Dec. 19, 2014).....................................23

*Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071, (RJH),
   2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005)................................... *passim*

*In re IMAX Sec. Litig.*, 283 F.R.D. 178 (S.D.N.Y. 2012)......................................15, 18

*In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689(SAS),
   2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. Sept. 29, 2003) ................................. *passim*

*In re Lloyd's Am. Trust Fund Litig.*, No. 96-cv-1262 (RWS),
   2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002) .......................................19

*In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306 (E.D.N.Y. 2006) ..........................11, 12

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) .......................... *passim*

*Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977) ............................ 6, 10

*McBean v. City of New York*, 233 F.R.D. 377 (S.D.N.Y. 2006)....................................21

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F. 3d 988 (9th Cir. 2010) ................................ 8

*In re Merrill Lynch & Co. Res. Reports Sec. Litig.*, No. 02 MDL
    1484, 2007 U.S. Dist. LEXIS 9450 (S.D.N.Y. Feb. 1, 2007) ....................................23

*In re Merrill Lynch & Co., Inc. Res. Reports Sec. Litig.*, No. 02 MDL
    1484 (JFK), 2007 U.S. Dist. LEXIS 93423 (S.D.N.Y. Dec. 19, 2007)....................................13

*In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124
    (S.D.N.Y. 2008) ...............................................................................................6

*Merryman v. Citigroup, Inc.*, No. 1:15-09185-CM
    (S.D.N.Y. July 12, 2019)....................................................................................23

*In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57
    (S.D.N.Y. 1993) ................................................................................................8

*Milstein v. Huck*, 600 F. Supp. 254 (E.D.N.Y. 1984) ....................................16

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ......................... 4

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465
    (S.D.N.Y. 1998) ................................................................................................7

*Newman v. Stein,* 464 F.2d 689 (2d Cir. 1972)....................................12, 22

*O'Brien v. National Prop. Analysts Partners*, 739 F. Supp. 896
    (S.D.N.Y. 1990) ............................................................................................6, 7

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997),
    *aff'd*, 117 F.3d 721 (2d Cir. 1997) ..............................................14, 15, 17

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ..................................................4

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000) ........................................ 7

iv

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200
(S.D.N.Y. 1995) ...........................................................................................7, 11, 15

*In re Sadia S.A. Sec. Litig.*, No. 08 Civ. 9528 (SAS),
2011 U.S. Dist. LEXIS 149107 (S.D.N.Y. Dec. 28, 2011).......................................14

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP),
2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004)........................................18

*Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008) ...................................... 25

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).................................19

*In re Veeco Instruments Sec. Litig.*, No. 05 MDL 01695 (CM),
2007 U.S. Dist. LEXIS 85629 (S.D.N.Y. Nov. 7, 2007) ................................... *passim*

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ................................ *passim*

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) ....................................................6

*In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319 (S.D.N.Y. 2005) .................................... 24

## STATUTES AND RULES

15 U.S.C.S. § 78u-4 ..............................................................................*passim*

Fed. R. Civ. P. 23 ............................................................................. *passim*

Pursuant to Fed. R. Civ. P. 23(e), Lead Plaintiff Guevoura Fund Ltd. ("Lead Plaintiff"), by and through its counsel, Brower Piven, A Professional Corporation ("Brower Piven" or "Lead Counsel"), respectfully submits this memorandum in support of (1) final approval of the notice program (the "Notice") conducted pursuant to the directions in this Court's July 30, 2019 Order Granting Preliminary Approval of Proposed Settlement and Providing for Notice to the Class (the "Preliminary Approval Order"; Dkt. No. 191); (2) final approval of the settlement (the "Settlement") of the above-captioned action (the "Action"), as set forth in the Stipulation and Agreement of Settlement, dated April 30, 2019 (the "Stipulation"),[1] which the Court preliminarily approved by its Preliminary Approval Order; and (3) final approval of the Plan of Allocation of the Settlement proceeds.

## I.    PRELIMINARY STATEMENT

As set forth in detail in the Brower Declaration, the Settlement obtained for the Class in this Action is the product of over three and a half years of investigation, hard-fought litigation, and several rounds of complicated, multilateral settlement negotiations.

Since this Action was commenced in September 2015, Lead Plaintiff has diligently and vigorously pursued its claims against the Director Defendants and was prepared to take the Action to trial if the Settlement had not been reached.  To that end, Lead Counsel, *inter alia*: (i) reviewed and analyzed information obtained from numerous public and private sources (*e.g.*, SFX's filings with the Securities and Exchange Commission ("SEC"), press releases, news

---

[1] The Stipulation is attached as Exhibit 1 to the Notice of Motion For: (1) Preliminary Approval Of Settlement; (2) Approval Of Notice To The Class; And (3) Scheduling Of A Final Approval Hearing.  Dkt. No. 186.  Unless otherwise indicated, capitalized terms not defined herein shall have those meanings ascribed to them in the Stipulation and the Declaration of David A.P. Brower In Support of Lead Plaintiff's Motion for Final Approval of Class Notice, Final Approval of the Proposed Settlement, Final Approval of the Proposed Plan of Allocation, and Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, dated October 11, 2019 (the "Brower Declaration").

articles and other media reports, and securities analysts reports); (ii) retained and consulted with consultants and experts on damages and market efficiency; (iii) fully briefed and successfully opposed the Director Defendants' motions to dismiss; (iv) obtained certification of the Class based on the Lead Plaintiff's deposition and Lead Counsel's financial consultant's report on market efficiency, price impact and uniform damages methodology; (v) engaged in discovery, including from the Director Defendants, the various SFX entities, and numerous third-parties; and (vi) reviewed tens-of-thousands of pages of documents produced by the Director Defendants and the various SFX entities, and over half a million of pages of documents provided in total from third-parties.  Through these efforts, Lead Counsel developed an in-depth understanding of the Action.  As such, Lead Plaintiff and Lead Counsel were well positioned to evaluate the strengths and weaknesses of the Class' claims, the value of those claims, and the ability to recover in the event Lead Plaintiff succeeded on the merits.

The Settlement was achieved only after intensive and protracted adversarial negotiations that were ultimately advanced (but not completed) with the assistance of two separate, lengthy mediations, one before retired United States District Judge Layn R. Phillips and subsequently before United States Magistrate Judge Ona T. Wang.  Although confident of its success on the merits, Lead Plaintiff was aware that the risk of a loss still existed.  Moreover, Lead Plaintiff was cognizant of the expense and delay associated with continued litigation, a lengthy trial, and, inevitable post-trial motions and appeals, as well as the complications resulting from the SFX and Sillerman bankruptcies.  Further, Lead Plaintiff was well aware of the Director Defendants' D&O wasting insurance policies, as well as the fact that Defendant Sillerman is still in bankruptcy faced with claims that most likely exceed his available assets.  As discussed in detail below, the Settlement, which provides a certain and substantial benefit to the Class, without the attendant risks, costs and delays of further litigation, is a fair, reasonable and adequate.

The lack of objections or requests for exclusion, so far, evinces the positive reaction of the Class to the Settlement, which, as discussed below, also supports the Settlement.

For the reasons stated herein and in the Brower Declaration, Lead Plaintiff respectfully requests that the Court grant final approval to the Settlement.

## II.   HISTORY OF THE ACTION

The accompanying Brower Declaration contains a detailed discussion of Lead Plaintiff's claims, the factual background and procedural history of the Action, the investigation and discovery undertaken, the motion practice, and the negotiations leading to this Settlement.  Lead Plaintiff will, therefore, not repeat that information herein, but rather respectfully refer the Court to the Brower Declaration.  Instead, this memorandum will focus on the factual and legal matters relevant to Court approval of the proposed Settlement under Fed. R. Civ. P. 23(e).

## III.   NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF THE PSLRA, FED. R. CIV. P. 23, AND DUE PROCESS

### A.   Relevant Standards

In connection with the settlement of a federal class action, FED. R. CIV. P. 23(e)(1)(B) requires the Court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.  The adequacy of a class action settlement notice is "measured by reasonableness." *Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*, 396 F.3d 96, 113 (2d Cir. 2005); *Charron v. Pinnacle Group NY LLC*, No. 07 Civ. 6316, 2012 U.S. Dist. LEXIS 79550, at *27 (S.D.N.Y. June 6, 2012) (quoting *Wal-Mart*).  As explained below, each of the requirements of FED. R. CIV. P. 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the applicable case law and due process have been followed scrupulously in this case, both as to procedure and content.

### B.   The Notice Procedure Was Appropriate

The Supreme Court has held that notice must be the best practicable under the

circumstances including by first class mail where the names and addresses of the beneficiaries of

the settlement are available through reasonable efforts.  *See Eisen v. Carlisle & Jacquelin*, 417

U.S. 156, 176-77 (1974) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306,

318 (1950)). In *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), the Supreme Court

explained the due process requirements for notice:

> The plaintiff must receive notice plus an opportunity to be heard and participate in
> the litigation, whether in person or through counsel. The notice must be the best
> practicable, "reasonably calculated, under all the circumstances, to apprise
> interested parties of the pendency of the action and afford them an opportunity to
> present their objections." The notice should describe the action and the plaintiffs'
> rights in it.  Additionally, we hold that due process requires at a minimum that an
> absent plaintiff be provided with an opportunity to remove himself from the class
> by executing and returning an "opt out" or "request for exclusion" form to the
> court. Finally, the Due Process Clause of course requires that the named plaintiff
> at all times adequately represent the interests of the absent class members.

*Id*. at 812 (citations omitted); *see also* 7A Wright, Miller & Kane, FEDERAL PRACTICE AND

PROCEDURE §1789.1 at 575-84 (3d ed. 2005). "Notice need not be perfect" or received by every

class member, *In re Merrill Lynch Tyco Res. Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008),

but need only be "the best notice practicable under the circumstances, including individual notice

to all members who can be identified through reasonable effort," *Girault v. Supersol*, No. 1:11

Civ. 6835 (PAE), 2012 U.S. Dist. LEXIS 89976, at *7 (S.D.N.Y. June 28, 2012) (quoting FED.

R. CIV. P. 23(c)(2)(B)), in order to meet the requirements of FED. R. CIV. P. 23(c), (e) and (h),

and due process.[2]

The notice procedure here sought to reach the greatest number of Class Members

possible. Pursuant to the Court's Preliminary Approval Order, 10,998 copies of the Notice were

---

[2] *See also DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 945-
47 (10th Cir. 2005) (finding notice program similar to the one preliminarily approved by the
Court in this case satisfied due process); *Mullane*, 339 U.S. at 314 (notice need only be
"reasonably calculated, under all the circumstances, to apprise interested parties of the pendency
of the action and afford them an opportunity to present their objections").

mailed to potential Class Members or their nominees as of October 8, 2019.[3]  The Notice also advised brokers, banks and other nominees holding SFX common stock for beneficial holders in "street name" to either provide the Claims Administrator with the names and addresses of the beneficial holders of those ordinary shares to enable the Claims Administrator to mail them the Notice or to obtain sufficient copies themselves to mail to their customers (they would be reimbursed for their reasonable costs associated with delivering copies of the Notice to their customers).  Segura Decl. at ¶4.

Additionally, a Publication Notice was published over *PRNewswire* on three (3) separate, staggered days (August 30, September 6, September 13, 2019), advising potential Class Members of the Settlement, the Plan of Allocation and request for attorneys' fees and reimbursement of expenses, and advised potential Class Members of how they could obtain a copy of the full Notice, the Proof of Claim form and additional information through the Claims Administrator's toll-free telephone number.  Segura Decl. at ¶10.  JND also posted information regarding the Settlement on the website, www.SFXSecuritiesLitigation.com, which it designed, implemented and maintains, and also posted downloadable copies of the Stipulation, as well as both the Notice and Proof of Claim and Release form ("Proof of Claim") and other important case documents.  *Id*. at ¶12.

The deadline for objections to any aspect of the Settlement or requests for exclusion from the Class expires on November 12, 2019.  To date, ***not a single*** Class Member has filed an objection to the Settlement or requested exclusion from the Class.   Segura Decl. at ¶13; Brower Decl. at ¶10.

---

[3] *See* Declaration of Luiggy Segura Regarding (A) Mailing of Notice of Proposed Settlement of Class Action and Proof of Claim and Release Form; (B) Publication of Summary Notice; and (C) Report on Requests for Exclusion Received, dated October 9, 2019, the Court-appointed Claims Administrator here ("Segura Declaration" or "Segura Decl.").  Appendix, Ex. 1.

C.     **The Content of the Notice Was Appropriate**

1.     **The Standard Governing the Content of Class Notice**

As to content,  FED. R. CIV. P. 23(c)(2)(b) requires the notice to state the following: (a) the nature of the action; (b) the definition of the class certified; (c) the class claims, issues, or defenses; (d) that a class member may enter an appearance through an attorney if the member so desires; (e) that the court will exclude from the class any member who requests exclusion; (f) the time and manner for requesting exclusion; and (g) the binding effect of a class judgment on members under Rule 23(c)(3).  Settlement notices under FED. R. CIV. P. 23 do not need to delve into excessive details about the specifics of the settlement and the legal claims of the parties. The case law is generally in accord that settlement notices should be concise and simple, and information can be supplied by incorporation of and/or by reference to accessible settlement-related documents available through other public sources.[4]   Indeed, notice is adequate if the average settlement class member understands the terms of the proposed settlement and the options they have. *Charron*, 2012 U.S. Dist. LEXIS 79550, at *27; *Wal-Mart*, 396 F.3d at 114; *In re ML Tyco*, 249 F.R.D. at 133.[5]

As to fee request disclosures, courts in this Circuit have held that, as with the other terms

---

[4] *O'Brien v. National Prop. Analysts Partners,* 739 F. Supp. 896, 901 (S.D.N.Y. 1990) (class notice need only provide "sufficient guidance as to the major terms and areas of agreement to allow class members to make further inquiry, either by examining the full settlement agreement or by appearing at the settlement hearing"); *see also Cannon v. Texas Gulf Sulphur Co*., 55 F.R.D. 308, 313 n.2 (S.D.N.Y. 1972) (notice was sufficient where it explained what a class member would receive depending on the factors enumerated therein); *Marshall v. Holiday Magic, Inc*., 550 F.2d 1173, 1178 (9th Cir. 1977) ("The aggregate amount available to all claimants was specified and the formula for determining one's recovery was given. Nothing more specific is needed.").

[5] *See also Handschu v. Special Servs. Div.*, 787 F.2d 828, 833 (2d Cir. 1986) (class notice is expected only to provide sufficient information  to "alert class members" to the pendency of the settlement and to "their options in connection" with that pending settlement); *Weinberger v. Kendrick*, 698 F.2d 61, 70-71 (2d Cir. 1982) (noting that a class notice should alert class members to "the relevant terms of the proposed settlement," "their options in connection with that case," and offer them enough information "to probe more deeply" if desired).

of the settlement, notice need only be "very general" and contain an "an estimation of attorneys' fees and other expenses." *O'Brien*, 739 F. Supp. at 901; *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) (quoting *O'Brien* with approval).  Indeed, "notice of settlement often does not contain detailed information about the amount of fees but simply notifies class members of the fee's outside limit."  *Powers v. Eichen*, 229 F.3d 1249, 1255 (9th Cir. 2000).  These decisions reflect the "expectation . . . that the fees will be set by the court upon consideration of the evidence, including the objections of nonintervening [sic] class members."  *Id.*  at 1443.[6]

Moreover, Fed R. Civ. P. 23(h) provides that:

In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:

(1)    A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

(2)    A class member, or a party from whom payment is sought, may object to the motion.

(3)    The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).

(4)    The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D).

Fed R. Civ. P. 54(d)(2) provides that:

(A)    Claim to Be by Motion. A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.

(B)    Timing and Contents of the Motion. Unless a statute or a court order provides otherwise, the motion must:

---

[6] This is consistent with precedent in the Second Circuit.  *See O'Brien*, 739 F. Supp. at 901. There can be no question that the Notice here fulfilled that goal.

> (i)    be filed no later than 14 days after the entry of judgment;
>
> (ii)   specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
>
> (iii)  state the amount sought or provide a fair estimate of it; and
>
> (iv)   disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

In accord with FED. R. CIV. P. 23(h)'s requirements, a fee motion must be filed a reasonable time in advance of the time for class members to object to it or request exclusion from the class. Lead Plaintiff's papers in support of the Settlement and Lead Counsel's actual application for an award of attorneys' fees (and the Brower Declaration in support thereof) are being filed on October 11, 2019 – over a month before the deadline for objections and two months before the scheduled hearing on the fairness of the Settlement and Lead Counsel's fee motion. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F. 3d 988, 995 (9th Cir. 2010) (construing the timing requirement of FED. R. CIV. P. 23(h)). Further, in securities class actions, Congress set forth specific required contents for notices to class members in PSLRA cases regarding fee applications by successful plaintiffs' counsel. *See* 15 U.S.C §78u-4(a)(7).

### 2.    The Content of the Notice Here Was Appropriate

The Notice here (Segura Aff., Ex. A), clearly meets and exceeds all of the requirements as to content for a class notice.[7] The long-form Notice, *inter alia*: (1) details the terms of the Settlement and the releases that would be exchanged; (2) summarizes the history of the litigation;

---

[7] Courts have repeatedly sustained notices in cases where the notice included only very general information. *See, e.g.*, *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y. 1997) ("The notice need not be highly specific, and indeed 'numerous decisions, no doubt recognizing that notices to class members can practicably contain only a limited amount of information, have approved very general description[s] of the proposed settlement.'") (quoting *Weinberger*, 698 F.2d at 70) (internal quotation omitted); *see also In re Michael Milken & Assoc. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (relying on *Handschu*, 787 F.2d at 833).

(3) describes the parties and the Class; (4) discusses the settlement negotiations; (5) discusses Lead Plaintiff's damages estimates of recoverable damages at trial for the Class; (6) details the Plan of Allocation; (7) details the percentage and per share recoveries to Class Members based on the dates of their purchases and sales, if any, of SFX common stock during the Class Period (8) details the maximum amount that Lead Counsel would seek in attorneys' fees; (9) describes Class Members' right to request exclusion from the Class or appear through personal counsel of their choosing and/or to object to the Settlement, Plan of Allocation and/or request for attorneys' fees and reimbursement of expenses; (10) specifies the deadlines for asserting these rights and procedures for doing so; (11) provides addresses, a toll-free telephone number and a website where Class Members could obtain additional information; and (12) informs Class Members when Lead Plaintiff's and Lead Counsel's papers in support of the proposed Settlement, Plan of Allocation and request for attorneys' fees and expenses will be filed with the Court and available for their inspection.

The Notice also complies with the settlement notice disclosure requirements of the PSLRA regarding the "statement of plaintiffs' recovery," which states that Class Members' average per share recovery will be $0.37 per share if the Sillerman Contribution is not paid and $0.41 if the Sillerman Contribution is paid; it identifies the attorneys and provides their addresses, it provides information on how to contact Lead Counsel's representatives to obtain additional information, and it contains a brief description of the reasons why the parties are proposing the Settlement.  *See* §78u-4(a)(7)(A)-(B) and (D)-(E).  The Notice, however, also points out that the "average per share recovery" is not necessarily reflective of Class Members' actual likely recoveries from the Settlement and provides more accurate per share figures in the Plan of Allocation detailed in the Notice based on the various scenarios in which Class Members' transactions in SFX common stock may have occurred during the Class Period.

Indeed, Lead Counsel, with the assistance of their damages expert, provided step-by-step formulas for Class Members to calculate their own, individual Recognized Loss by reference to the Plan of Allocation, and the Notice sets forth the full Plan of Allocation to enable Class Members to preliminarily calculate the value of their claims (subject to the caveat in the Notice that claims will be reduced *pro rata* by the amount that all claims in the aggregate exceed the amount of the Net Settlement Fund). *See Holiday Magic*, 550 F.2d at 1178 (overruling objection to class notice that did not provide description of class members' recoveries where the notice contained the plan of distribution of the settlement proceeds).

The Notice also complies with the attorneys' fee disclosure requirements of the PSLRA by: (a) identifying which counsel intend to make an application for attorneys' fees and costs from the fund established by the settlement for the class; (b) stating the maximum amount of fees and costs that will be sought both as a percentage of the whole and on an average per share basis; and (c) providing a brief explanation supporting the attorneys' fees and costs sought. *See* 15 U.S.C. §78u-4(a)(7)(C). That information is both clearly summarized in the summary section at the beginning of the Notice and set forth in more detail in Section XII of the Notice ("Application For Attorneys' Fees And Expenses").

Regarding the requested award of attorneys' fees and expenses, the Notice recites factors, as required by the plain language of the PSLRA, "supporting the fees and costs sought, including that: substantial time has been devoted to the Action, that Lead Counsel has not been reimbursed, that the fees will be used to compensate counsel for their efforts and their risks of representing the Class on a contingent basis, and that the amount is within the range of fees awarded. It also discusses that the Claims Administrator will be paid and provides the maximum cap. *See* Section XII of the Notice. Furthermore, consistent with this Court's approval of the form and content of the long-form Notice, the Notice contained all other information that the Court required in its

Preliminary Approval Order in compliance with 15 U.S.C. §78u-4(a)(7)(F). In sum, the notice to the Class meets, and indeed exceeds, all requirements of FED. R. CIV. P. 23 (c), (e), and (h), 15 U.S.C. § 78u-4(a)(7) of the PSLRA, the applicable case law and due process.

## IV.  THE SETTLEMENT MEETS THE REQUIREMENTS FOR FINAL APPROVAL

The Settlement is fair, reasonable, and adequate and meets the judicial standard for final approval of a class action settlement under Fed. R. Civ. P. 23(e).

### A.  The Law Favors and Encourages Settlements

Rule 23(e) requires judicial approval for any compromise of claims brought on a class basis. Approval of a proposed settlement is within the court's discretion, to be exercised in accordance with public policy that strongly favors pretrial settlement of complex class action lawsuits. *Wal-Mart*, 396 F.3d at 116-17 ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy."); *In re Prudential*, 163 F.R.D. at 209 ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").

The settlement of complex class action litigation is also clearly favored by the courts in the Second Circuit. *See In re Ashanti Goldfields Sec. Litig.*, No. CV-00-717 (DGT), 2005 U.S. Dist. LEXIS 28431, at *3-*4 (E.D.N.Y. Nov. 15, 2005); *Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004). Moreover, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006); *see also Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation.").

In deciding whether or not to approve a class action settlement, courts have recognized that a settlement represents an exercise of judgment by the negotiating parties and that, while a court should not give "rubber stamp approval" to a proposed settlement, it must "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974); *see also Newman v. Stein,* 464 F.2d 689, 691-92 (2d Cir. 1972) ("[W]e recognized that since "'the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation,' the court must not turn the settlement hearing 'into a trial or a rehearsal of the trial.'") (citation omitted.); *Hayes v. Harmony Gold Mining Co.*, No. 08 Civ. 03653, 2011 U.S. Dist. LEXIS 138543, at *5 (S.D.N.Y. Nov. 29, 2011) (quoting *Grinnell*).

## B.    The Settlement is Fair, Reasonable and Adequate

The standard for reviewing the proposed settlement of a class action in the Second Circuit, as in other circuits, is whether the proposed settlement is "fair, reasonable and adequate." *Luxottica Group*, 233 F.R.D. at 310; *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689(SAS), 2003 U.S. Dist. LEXIS 17090, at *9 (S.D.N.Y. Sept. 29, 2003).  "[I]n any case there is a range of reasonableness with respect to a settlement." *Newman*, 464 F.2d at 693.

The 2018 amendments to FED. R. CIV. P. 23(e)(2) requires the Court, in considering whether the settlement is fair, reasonable and adequate, to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;

> (B) the proposal was negotiated at arm's length;

> (C) the relief provided for the class is adequate, taking into account:

>> (i) the costs, risks, and delay of trial and appeal;

>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

>> (iii) the terms of any proposed award of attorney's fees, including timing of

payment;[8] and

(iv) any agreement required to be identified under Rule 23(e)(3)[9]; and

(D) the proposal treats class members equitably relative to each other.

In addition, the Second Circuit has identified nine factors that courts should consider in

deciding whether to approve a proposed settlement of a class action:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction
> of the class to the settlement, (3) the stage of the proceedings and the amount of
> discovery completed, (4) the risks of establishing liability, (5) the risks of
> establishing damages, (6) the risks of maintaining the class action through the
> trial, (7) the ability of the defendants to withstand a greater judgment, (8) the
> range of reasonableness of the settlement fund in light of the best possible
> recovery, [and] (9) the range of reasonableness of the settlement fund to a
> possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463.[10]

As demonstrated below and in the Brower Declaration, application of the *Grinnell* factors

and the Rule 23(e) factors here overwhelmingly demonstrates that the Settlement is fair,

reasonable and adequate.

## 1.    The Settlement Is The Product of Arm's-Length Negotiation

A strong initial presumption of fairness attaches to a proposed settlement if it is reached

by experienced counsel after arm's-length negotiations, and great weight is accorded to counsel's

recommendation.   *Wal-Mart*, 396 F.3d at 116; *In re ML Tyco,* 249 F.R.D. at 133; *D'Amato v.*

*Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *In re Veeco Instrum. Sec. Litig.*, No. 05 MDL 01695

(CM), 2007 U.S. Dist. LEXIS 85629, at *17 (S.D.N.Y. Nov. 7, 2007) ("'A proposed class action

---

[8] The requested fees award and the quality of the representations are discussed in Lead Plaintiff's Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, submitted contemporaneously herewith.

[9] All agreements related to the Settlement are detailed in the Stipulation.

[10] All nine factors need not be satisfied; rather, a court should look at "the totality of these factors in light of the particular circumstances." *In re Merrill Lynch & Co., Inc. Res. Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 93423, at *26 (S.D.N.Y. Dec. 19, 2007) (internal citations omitted).

settlement enjoys a strong presumption that it is fair, reasonable and adequate if . . . it was the product of arm's-length negotiations conducted by capable counsel, well-experienced in class action litigation'") (internal citations omitted).[11] "Absent fraud or collusion, the Court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007). Where "[c]ounsel for plaintiff is able and experienced, particularly in the specific area with which these actions are concerned," in which case counsel's "judgment is entitled to great weight." *In re Michael Milken*, 150 F.R.D. at 68.

This presumption of fairness and adequacy applies here because the Settlement was reached by highly experienced, fully informed counsel after extensive arm's-length negotiations with the assistance of well-regarded mediators. The parties attempted to reach a settlement for many months in 2017, before and after an almost twelve-hour mediation before retired Judge Phillips, but those efforts were derailed by Sillerman being forced into involuntary bankruptcy. Only after months of additional litigation, a second mediation with Magistrate Judge Wang and extensive and complicated follow up arm's-length settlement negotiations between the various competing constituencies seeking to make claims on the available D&O insurance coverage, as well as resolving a plethora of difficult bankruptcy issues, was the Settlement finally reached on March 12, 2019.  These efforts were followed by lengthy and complex additionally negotiations between the six competing sides regarding the terms of the stipulations for the Class, the Opt-Out

---

[11] *Accord In re Sadia S.A. Sec. Litig.*, No. 08 Civ. 9528 (SAS), 2011 U.S. Dist. LEXIS 149107, at *1 (S.D.N.Y. Dec. 28, 2011); *In re Canadian Superior Sec. Litig.*, No. 09 Civ. 10087 (SAS), 2011 U.S. Dist. LEXIS 132708, at *2 (S.D.N.Y. Nov. 16, 2011); *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071, (RJH), 2005 U.S. Dist. LEXIS 24890, at *15 (S.D.N.Y. Oct. 24, 2005);  *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts have consistently given "'great weight'. . . to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation") (citation omitted); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

Plaintiffs and the SFX Litigation Trustee, which needed to dovetail in many respects, as well as the form of the Bankruptcy Rule 9019 Order to be presented to the Sillerman Bankruptcy Court. *See* Brower Decl. at ¶¶45-50, 72-73, 75, 77-80.

The active involvement of experienced and independent mediators in the negotiation of the Settlement is strong evidence of the absence of any collusion and further supports the presumption of fairness. *See D'Amato*, 236 F.3d at 85 (a mediator's involvement in settlement negotiations "helps to ensure that the proceedings were free of collusion and undue pressure"); *Hicks*, 2005 U.S. Dist. LEXIS 24890, at *14-*15 ("The participation of a respected and neutral mediator "gives [the court] confidence that [the negotiations] were conducted in an arms-length, non-collusive manner.") (quoting *In re AMF Bowling Sec. Litig.*, 334 F. Supp. 2d 462, 465 (S.D.N.Y. 2004)); *In re Giant Interactive Grp., Inc.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (commenting positively on the participation of retired Judge Phillips).

There can also be no question that Lead Counsel was fully informed of the strengths and weaknesses of the Class claims (as well as those of the competing constituencies) by the time the Stipulation was executed. Lead Counsel conducted an extensive factual investigation of Lead Plaintiff's claims, had extensive consultations with their economics, financial and damages consultants and experts, conducted discovery, and had discussions between the parties regarding their respective positions, theories, claims, defenses and responses to those claims and defenses throughout the litigation, including during the mediations. Lead Counsel, who have extensive experience prosecuting complex securities class actions, submit that the Settlement is not only fair, reasonable, and adequate, but an outstanding result. *See* Brower Decl. at ¶127. *See also In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) ("great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.") (quoting *PaineWebber*, 171 F.R.D. at 125)); *Chatelain v. Prudential-Bache Sec.,*

*Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992) ("A substantial factor in determining the fairness of the settlement is the opinion of counsel involved in the settlement.") (citation omitted).

### 2.     The Complexity, Expense, and Likely Duration of the Litigation

"The expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984). *See also In re Gilat Satellite Networks, Ltd.*, No. 02-1510 (CPS), 2007 U.S. Dist. LEXIS 29062, at *36 (E.D.N.Y. Apr. 19, 2007) ("Securities class actions are generally complex and expensive to litigate."). Securities class actions are notoriously complex and this Action was no different.

Although the parties were at the discovery stage, substantial time and expense that would be involved in continuing to prosecute the Action through trial and the inevitable post-trial motions and appellate proceedings. Simply completing the pre-trial proceedings would have involved considerable additional discovery; taking dozens of depositions; defense of the depositions; preparation of complex expert reports and discovery of the expert witnesses; the negotiation and completion of a complex and voluminous pre-trial order; and extensive briefing on motions for summary judgment, motions to strike experts and other motions *in limine* likely to be made by Lead Plaintiff and by the Director Defendants. All of this had to be done on an expedited basis based on the tight deadlines set by the Court. All of the foregoing would have added significantly to the time and expense of this Action and, even if Lead Plaintiff was ultimately successful, delayed by years any recovery to the Class. *See* Brower Decl. at ¶¶108-09. *See also In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, MDL No. 1500, 2006 U.S. Dist. LEXIS 17588, at *33 (S.D.N.Y. Apr. 6, 2006) ("Each step of the way, expenses would continue to accumulate, further decreasing the funds available to Class Members."); *Hicks*, 2005 U.S. Dist. LEXIS 24890, at *16 ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future

settlement or trial of the action.").

### 3.    The Reaction of the Class to the Settlement

"'[T]he absence of objectors may itself be taken as evidencing the fairness of a settlement.'" *PaineWebber*, 171 F.R.D. at 126 (citation omitted); *see also  In re Veeco*, 2007 U.S. Dist. LEXIS 85629, at *21-*22 (where no objections and one request for exclusion were received, the Court found this fact to show those affected by the settlement had "overwhelmingly endorsed it") (citing *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362-63 (S.D.N.Y. 2002)).   In accordance with the procedures established by the Court's Preliminary Approval Order, an extensive notice program was undertaken in this Action and the proposed Settlement was widely disseminated to SFX's Class Period shareholders.  The deadline for objections to the Settlement is November 12, 2019.  To date, not a single Class Member has objected or sought exclusion.   The absence of negative feedback from Class Members evidences an overall favorable response of the Class Members to the Settlement.  Thus, this factor strongly supports approval of the Settlement.

### 4.    The Stage of the Proceedings and Discovery Completed

In evaluating a settlement, "[t]here is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact.  It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation."  Newberg & Conte, NEWBERG ON CLASS ACTIONS §11.45 (4th ed. 2002); *see also In re AOL Time Warner,* 2006 U.S. Dist. LEXIS 17588, at *36-*37 ("The relevant inquiry for this factor is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement.").

As discussed more fully above and in the Brower Declaration, Lead Counsel conducted

an extensive investigation relating to Lead Plaintiff's claims in the Action and also conducted extensive analysis relevant to the Class Members' claims and the reasonableness of the Settlement. Lead Counsel also consulted with well-respected financial experts concerning the calculation of the potential amounts of recoverable damages during the Class Period, as well as issues concerning loss causation and the Director Defendants' potential defenses to Lead Plaintiff's Class-wide damages estimates. *See* Brower Decl. at ¶¶111-14. Accordingly, Lead Plaintiff and Lead Counsel were as extremely informed regarding the strengths and weaknesses of their claims and the Director Defendants' defenses when the Settlement was reached and that allowed them to balance the benefits of the Settlement with the risk that Lead Plaintiff may not be able to obtain a larger recovery. Thus, this Action had advanced to a stage where the parties certainly "'have a clear view of the strengths and weaknesses of their cases.'" *Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 U.S. Dist. LEXIS 8608, at *10 (S.D.N.Y. May 14, 2004) (citation omitted); *In re Drexel Burnham Lambert Group Inc.*, 130 B.R. 910, 916 (S.D.N.Y. Aug. 20, 1991), *aff'd*, 960 F.2d 285 (2d Cir. 1992).

### 5.   The Substantial Risks of Establishing Liability and Damages

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463; *Global Crossing*, 225 F.R.D. at 459; *see also IMAX*, 283 F.R.D. at190. While the Court sustained Lead Plaintiff's claims against the Director Defendants during the motion to dismiss stage, Lead Plaintiff recognized that it faced substantial risks at later stages with respect to proving liability, loss causation and damages. Brower Decl. at ¶¶115-19.

Lead Plaintiff believes it would have succeeded on the merits in this Action. That said, it must acknowledge that it faced the risks of failing to establish one or more of the elements of its claim at trial, such as falsity, scienter, loss causation or damages. For instance, proof of scienter

is typically a difficult challenge in a securities fraud action.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (To establish liability under Section 10(b), a plaintiff must prove that a defendant acted with *scienter*, which is "a mental state embracing intent to deceive, manipulate, or defraud."); *see also In re AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *39 (noting that "the difficulty of establishing liability is a common risk of securities litigation"); *Indep. Energy*, 2003 U.S. Dist. LEXIS 17090, at *11 (noting difficulty of proving scienter).

Lead Plaintiff also faced substantial risk in proving the existence and amount of damages. Lead Plaintiff would have to prove that "each class member's damages (if any) resulted from defendants' alleged misconduct, and the amount of any such damages." *Global Crossing*, 225 F.R.D. at 459.  Again, assuming this case survived pre-trial motions and Lead Plaintiff proved liability, the economic issues concerning damages would have been both complex and hotly contested, requiring expert testimony on sophisticated methodologies, with uncertain results. "The reaction of a jury to such complex expert testimony is highly unpredictable. Expert testimony about damages could rest on many subjective assumptions, any one of which could be rejected by a jury as speculative or unreliable. Conceivably, a jury could find that damages were only a fraction of the amount that Plaintiffs contended."  *In re Lloyd's Am. Trust Fund Litig.*, No. 96-cv-1262 (RWS), 2002 U.S. Dist. LEXIS 22663, at *61-*62 (S.D.N.Y. Nov. 26, 2002).

Furthermore, the courts have repeatedly recognized that a defendant's bankruptcy in securities cases adds substantially to the difficulties and risks facing plaintiff's counsel in achieving a recovery for a class. *See, e.g.*, *In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, 2009 U.S. Dist. LEXIS 19210, at *48 (E.D. La. Mar. 2, 2009) ("Because plaintiffs faced considerable risk in litigating the damages element of their claim and are limited in their recovery because of OCA's bankruptcy, this factor weighs in favor of settlement"); *In re Delphi Corp. Sec.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008) (considering the company's bankruptcy

under the likelihood of success on the merits factor and approving the settlement); *In re Quintus Sec. Litig.*, No. C-00-4263 VRW, 2006 U.S. Dist. LEXIS 54379, at *8 (N.D. Cal. 2006) (finding that the risk and cost of further litigation is enhanced by defendant's bankruptcy as part of the analysis in approving the settlement); *accord Maley*, 186 F. Supp. 2d at 360 (considering and discussing that the settlement negotiations were conducted against the background of a precarious financial condition, including a possible imminent bankruptcy as part of the settlement approval analysis).

Thus, no matter how confident a plaintiff is of victory, prudence and experience counsel that a successful result, particularly one in a complex class action securities case, is never assured, and that consideration should be credited in favor of approval of the Settlement here.

### 6.  The Risk of Maintaining the Class Action Through the Trial

Although the Class has been certified by the Court on consent following the Director Defendants' class discovery, there is no assurance of maintaining it, as certified, through to judgment as a court is expected to re-evaluate the appropriateness of class and its definition at later stages. *See* Fed. R. Civ. P. 23(c)(1)(C).  *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005); *Chatelain*, 805 F. Supp. at 214 ("Even if certified, the class [faces] the risk of decertification.").  Here, the Director Defendants "reserved their rights to seek alternation or amendment" to the class certification order, Dkt. No. 164 at ¶10, and did not waive any "defenses, objections or arguments" that they could assert at a later time. *Id.* at ¶11.  Given the changes in the law governing Fed. R. Civ. P. 23 and the PSLRA over the past few years, the risk always exists that a change in the law could occur that would result in decertification of the Class.

### 7.  The Ability of the Defendants to Withstand a Greater Judgment

In assessing a proposed settlement, the Court should consider the defendants' ability to

withstand a judgment greater than that secured by settlement.   *Grinnell*, 495 F.2d at 463. Moreover, "the ability of defendants to pay more, on its own, does not render the settlement unfair." *McBean v. City of New York*, 233 F.R.D. 377, 388 (S.D.N.Y. 2006).   Rather, the reasonableness of the Settlement is better analyzed in light of the amount of the Settlement compared to the substantial risks Lead Plaintiff faced in proving liability and damages, and not on whether the Director Defendants could have paid more.

Here, the D&O insurance coverage is a wasting asset as it pays legal fees of the Director Defendants, as well as providing coverage for the claims asserted in the Action.   By continuing with the accelerated schedule set by the Court, each day that the Action was not settled would take away money available for the Class for settlement.   Moreover, the Action was complicated by the SFX and Sillerman bankruptcies.   Finally, the Opt-Out Plaintiffs and the SFX Litigation Trustee had to be paid from the D&O insurance as well to settle (their D&O insurers insisted on all claims being settled at one time.    Given these facts, this factor weighs heavily in favor of the Settlement.

### 8.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The last inquiries under *Grinnell* are whether the Settlement is reasonable in view of (1) the best possible recovery, and (2) the risks of litigating the case on the merits.[12]   In analyzing these factors, the adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987); *In re IMAX*, 283 F.R.D. at

---

[12] Courts typically collapse into this inquiry the final two *Grinnell* factors: "the range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Grinnell*, 495 F.2d at 463. *Accord Global Crossing*, 225 F.R.D. at 460.

191-92 (same) (quoting *In re Giant*, 279 F.R.D. at 162).  Thus, the Court "must examine whether the settlement amount lies within a 'range of reasonableness,' which range reflects 'the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.* at 191 (quoting *Wal-Mart*, 396 F.3d at 119); *Newman*, 464 F.2d at 696 (same); *In re Flag Telecom Holdings, Inc.*, No. 02-CV-3400, 2010 U.S. Dist. LEXIS 119702, at *42 (S.D.N.Y. Nov. 5, 2010); *see also Indep. Energy*, 2003 U.S. Dist. LEXIS 17090, at *13 (noting few cases tried before a jury result in full amount of damages claimed).  To do so, a reviewing court "consider[s] and weigh[s] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable."  *Grinnell*, 495 F.2d at 462.

There are numerous risks involved in litigation and they have already been discussed above and are discussed in further detail in the Brower Declaration.  In light of these difficulties and risks specific to this Action, as well as the more typical risks associated with the types of complex legal and factual issues present in securities class actions, the unpredictability of a lengthy and complex trial, and the appellate process that would most likely follow, the fairness of the Settlement is clearly apparent.  *Maley*, 186 F. Supp. 2d at 366 (noting the many obstacles to plaintiff's ability to prevail on the merits).

Furthermore, the Second Circuit has held that "the fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved."  *Grinnell*, 495 F.2d at 455; *see also Global Crossing,* 225 F.R.D at 455 (same).  Here, by contrast, the Settlement represents a large percentage recovery for the Class that is well above any range of reasonableness -- ***a minimum 57% recovery of Class Members' best possible damages*** --before attorneys' fees and expenses (excluding the Sillerman Contribution), without even taking into

consideration the substantial risks the proceeding entailed.  *See* Brower Decl. at ¶126.  This Court has frequently found percentage recoveries far lower than the recovery here to be within the range of reasonableness for a settlement.  *See, e.g., Merryman v. Citigroup, Inc.*, No. 1:15-09185-CM, Order and Final Judgment, Dkt. No. 159 (S.D.N.Y. July 12, 2019) (approving settlement with 21-24% recovery); *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 U.S. Dist. LEXIS 177175, at *25 (S.D.N.Y. Dec. 19, 2014) (approving settlement with 36% recovery); *City of Providence v. Aéropostale, Inc.*, No. 11-7132-CM, 2014 U.S. Dist. LEXIS 64517, at *26-*28 (S.D.N.Y. May 9, 2014) (approving settlement in the recovery range of 9.2% to 21% of estimated damages); *In re Veeco,* 2007 U.S. Dist. LEXIS 85629, at *35 (approving settlement with 23.2% recovery); *Maley,* 186 F. Supp. 2d at 365 (approving settlement with 41% recovery).[13]

    In considering the reasonableness of the Settlement, the Court should also consider that the Settlement provides for payment to the Class now, rather than a speculative payment potentially many years down the road.  *See Global Crossing,* 225 F.R.D. at 461 ("The prompt, guaranteed payment of the settlement money increases the settlement's value in comparison to some speculative payment of a hypothetically larger amount years down the road.") (quotation omitted); *AOL Time Warner,* 2006 U.S. Dist. LEXIS 17588, at *44 (where a settlement fund is in escrow and earning interest for the class, "the benefit of the Settlement will . . . be realized far

---

[13] Other Courts in this District have as well.  *See In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 U.S. Dist. LEXIS 53007, at *15 (S.D.N.Y. May 13, 2011) ("the average settlement amounts in securities fraud class actions where investors sustained losses over the past decade . . . have ranged from 3% to 7% of the class members' estimated losses"); *Hicks*, 2005 U.S. Dist. LEXIS 24890, *19 (settlement representing 3.8% of plaintiffs' damage estimate was "within the range of reasonableness"); *In re Blech Sec. Litig.*, No. 94 Civ. 7696, 2000 U.S. Dist. LEXIS 6920, at *11 (S.D.N.Y. May 19, 2000) (approving settlement representing as much as 5% of estimated damages); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484, 2007 U.S. Dist. LEXIS 9450, at *13 (S.D.N.Y. 2007) (finding a settlement representing recovery of approximately 6.25% of estimated damages to be "at the higher end of the range of reasonableness of recovery in class action securities litigations").

earlier than a hypothetical post-trial recovery"). Under all of the above circumstances, the Settlement is not only fair, reasonable, and adequate, but an extraordinary result.

## V.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

The goal of the Plan of Allocation is to distribute equitably the Settlement proceeds to the Class Members who suffered economic losses resulting from the Director Defendants' alleged misrepresentations and omissions. "To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized – namely, it must be fair and adequate." *In re Giant*, 279 F.R.D. at 163 (quoting *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005)); *In re AOL Time Warner,* 2006 U.S. Dist. LEXIS 17588, at *58.  A plan of allocation is fair and reasonable as long as it has a "reasonable, rational basis." *Flag,* 2010 U.S. Dist. LEXIS 119702, at *61 (quotation omitted). Courts have recognized that "the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information." *PaineWebber*, 171 F.R.D. at 133; *see also Taft v. Ackermans*, No. 02-7951, 2007 U.S. Dist. LEXIS 9144, at *26 (S.D.N.Y. Jan. 31, 2007) ("If the plan of allocation is formulated by ''competent and experienced class counsel, an allocation plan need only have a 'reasonable, rational basis.'"). Moreover, as Settlements, courts give great weight to the opinion of experienced and informed counsel when assessing a proposed plan of allocation.  *See, e.g.*, *Flag,* 2010 U.S. Dist. LEXIS 119702, at *61; *EVCI*, 2007 U.S. Dist. LEXIS 57918, at *33 ("In determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel.").

The proposed Plan of Allocation here was developed by Lead Counsel after consultation with their damages expert, based on his work for Lead Plaintiff in this Action and his calculations of compensable damages. *See* Declaration of Zachary Nye, Ph.D. In Support of the

Proposed Settlement and Plan of Allocation, dated October 9, 2019 ("Nye Declaration" or "Nye Decl.") (Appendix, Ex. 2) at ¶¶34-35 (describing the development of the Plan of Allocation). The Recognized Loss calculations under the Plan of Allocation are based on the same per share damages calculations that Lead Plaintiff's damages expert determined for the purposes of estimating the maximum amounts of recoverable damages at trial in response to the alleged corrective disclosures.  *See* Nye Decl. at ¶35.   It, thus, allocates the Settlement proceeds based on the same formulas that Lead Plaintiff would most likely have offered at trial to prove Class Members' damages. *See id.*  As such, it is fair and equitable to claiming Class Members. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008) ("A reasonable plan may consider the relative strengths and values of different categories of claims."); *see also Curtiss-Wright Corp. v. Helfand*, 687 F. 2d 171, 173-75 (7th Cir. 1982) (permitting an unequal allocation of a class action settlement fund based on different defenses available against different class members) (relying, in part, on *Beecher v. Able, Inc.*, 575 F. 2d 1010 (2d Cir. 1978)).

Notably, in response to the 10,988 Notices mailed to potential Class Members to date, no objections have been received to the Plan of Allocation. Accordingly, for all of the reasons set forth herein and in the Brower Declaration and the Nye Declaration, the Plan of Allocation is fair and reasonable.

## VI.    CONCLUSION

For the reasons set forth herein and in the accompanying Brower Declaration, Lead Plaintiff and Lead Counsel respectfully request that the Court (1) grant final approval to the forms and methods for providing notice to the Class; (2) approve the proposed Settlement as fair, reasonable, and adequate; and (3) approve the proposed Plan of Allocation as fair and reasonable.

Dated:  October 11, 2019

**BROWER PIVEN**
  **A Professional Corporation**

*/s/ David A.P. Brower*
David A.P. Brower
136 Madison Avenue, 5th Floor
New York, NY 10016
T: (212) 501-9000
F: (212) 501-0300
Email: brower@browerpiven.com

*Counsel for Lead Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 11, 2019, I served true and correct copies of the foregoing Lead Plaintiff's Memorandum of Law in Support of Motion for Final Approval Class Notice; Final Approval of the Proposed Settlement; and Final Approval of the Proposed Plan of Allocation on all counsel by causing copies to be sent by the ECF system.

*/s/ David A.P. Brower*
David A.P. Brower
