**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GUEVOURA FUND LTD., On Behalf of
Itself and All Others Similarly Situated,

                  Plaintiff,

     v.

ROBERT F.X. SILLERMAN, D. GEOFFREY
ARMSTRONG, JOHN MILLER and
MICHAEL JOHN MEYER,

              Defendants.

**Case No. 1:15-cv-07192-CM**

**Case No. 1:18-cv-09784-CM**

## LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

**BROWER PIVEN**
  A Professional Corporation
David A.P. Brower
136 Madison Avenue, 5th Floor
New York, New York 10016
Telephone: (212) 501-9000
Facsimile: (212) 501-0300
Email: brower@browerpiven.com

*Counsel for Lead Plaintiff and the Class*

## **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ……………………………………………………  1

II.     LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES SHOULD
        BE GRANTED ………………………………………………………………  4

        A.      Lead Counsel are Entitled to an Award of Attorneys' Fees and
                Reimbursement of Expenses from the Common Fund …………………………  4

        B.      The Standard for Approval of Attorneys' Fees in the Second Circuit …………  5

        C.      The Requested Fees Are Reasonable Under the Lodestar Method ……………  7

                1.      The Labor Dedicated Justifies the Attorneys' Fees Requested  ………..  7

                2.      The Rates Charged Are Reasonable ……………………………………  9

                3.      The Application of a Negative Multiplier……………………………… 10

        D.      Lead Counsel's Requested Fee Percentage Is Reasonable Under
                Percentage Method ……………………………………………………….. 12

                1.      The Time and Labor Expended Are Reasonable  ……………………… 12

                2.      The Magnitude and Complexity Of This Litigation Support the Fee
                        Requested ………………………………………………………………… 12

                3.      The Substantial Risks to Lead Plaintiff's Recovery Fully Support
                        the Fee Requested By Lead Counsel  ……………………………………….. 13

                        a.      The Risk to Establishing Liability and Damages ……………… 14

                        b.      The Risk of Contingent Litigation……………………………… 14

                4.      The Quality Of Lead Counsel's Representation Of the Class Supports
                        The Fee Requested ……………………………………………………… 15

                5.      The Fee Requested Is Fair In Relation to the Settlement Amount  …… 16

                6.      Public Policy Considerations Fully Support the Fee Requested  ……… 18

        E.      Absence of Objections to the Fee Request Demonstrates it is Reasonable ……. 19

III.    THE REQUEST FOR REIMBURSEMENT OF EXPENSES IS REASONABLE…… 20

i

IV.    LEAD PLAINTIFF'S REQUEST FOR REIMBURSEMENT OF
ITS TIME IS REASONABLE……………………………………..…………………. 21

V.    CONCLUSION……………………………………………………………………… 22

## **TABLE OF AUTHORITIES**

### CASES

*Alpine Pharmacy v. Chas. Pfizer & Co., Inc.*, 481 F.2d 1045
    (2d Cir. 1973) ...........................................................................................................18

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418
    (S.D.N.Y. 2001) .....................................................................................................13, 19

*Antonopulos v. N. Am. Thoroughbreds, Inc.*, No. 87-0979G (CM),
    1991 U.S. Dist. LEXIS 12579 (S.D. Cal. May 6, 1991) .........................................17

*Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*, No. 96 Civ. 0583,
    2002 WL 1315603 (S.D.N.Y. June 17, 2002) ..........................................................11

*Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299 (1985) .................................4, 5, 18

*In re Blech Sec. Litig.*, 94 CIV. 7696 (RWS), 2000 WL 661680
    (S.D.N.Y. May 19, 2000) ..........................................................................................11

*Blum v. Stenson*, 465 U.S. 886 (1984) .....................................................................................9

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)......................................................................4

*In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229
    (S.D.N.Y. 2005) ........................................................................................................12

*In re China Sunergy Sec. Litig.*, 07 Civ. 7895 (DAB), 2011 U.S. Dist.
    LEXIS 53007 (S.D.N.Y. May 13, 2011)....................................................................16

*City of Detroit v. Grinnell Corp.*, 560 F.2d 1093 (2d Cir. 1977)...............................................9

*City of Providence v. Aéropostale, Inc.*, No. 11-7132,
    2014 U.S. Dist. LEXIS 64517 (S.D.N.Y. May 9, 2014)......................................17, 21

*In re Cnova N.V. Sec. Litig.*, No. 1:16-00444................................................................................9

*In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484 (E.D. Pa. 2003)...............................................17

*In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993)................................................16

*Dolgow v. Anderson*, 43 F.R.D. 472 (E.D.N.Y. 1968) ................................................................5

*Dubin v. E.F. Hutton Group, Inc.*, 878 F. Supp. 616 (S.D.N.Y. 1995) .........................................16

*Eltman v. Grandma Lee's, Inc.*, No. 82 Civ. 1912,
    1986 U.S. Dist. LEXIS 24902 (E.D.N.Y. May 28, 1986).......................................................18

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM),
    2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007)..................................................6, 10

*In re Flag Telecom Holdings*, No. 02-CV-3400 (CM) (PED),
    2010 U.S. Dist. LEXIS 119702, (S.D.N.Y. Nov. 5, 2010) ................................................17, 21

*Fogarazzo v. Lehman Bros.*, 03 Civ. 5194 (SAS), 2011 U.S. Dist. LEXIS
    17747 (S.D.N.Y. Feb. 23, 2011)..........................................................................................16

*Freudenberg v. E*Trade Fin. Corp.*, No. 07-8538, Final Judgment
    and Order of Dismissal, Dkt. No. 154 (S.D.N.Y. Oct. 22, 2012)...........................................10

*In re Gen. Instru. Sec. Litig.*, 209 F. Supp. 2d 423 (E.D. Pa. 2001) ......................................17

*In re Giant Interactive Group, Inc.*, 279 F.R.D. 151 (S.D.N.Y. 2011)......................................16

*Gierlinger v. Gleason*, 160 F.3d 858 (2d Cir. 1998)........................................................................9

*In re Gilat Satellite Networks, Ltd.*, CV-02-1510 (CPS),
    2007 U.S. Dist. LEXIS 29062 (E.D.N.Y. Apr. 19, 2007).......................................................12

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)........................................... *passim*

*In re Heritage Bond Litig.*, 02-ML-1475-DT(RCx),
    2005 U.S. Dist. LEXIS 13627 (C.D. Cal. June 10, 2005).......................................................17

*Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH),
    2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005)..........................................................5

*In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM),
    2014 U.S. Dist. LEXIS 177175 (S.D.N.Y. Dec. 19, 2014).....................................................17

*Howes v. Atkins*, 668 F. Supp. 1021 (E.D. Ky. 1987)...................................................................17

*In re Independent Energy Holdings PLC Sec. Litig.*,
    302 F. Supp. 2d 180 (S.D.N.Y. 2003) ...................................................................................20

*In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d 467
    (S.D.N.Y. 2009) ....................................................................................................................16

*Internal Imp. Fund Trustees v. Greenough*, 105 U.S. 527 (1881)....................................................4

*In re Interpublic Sec. Litig.*, Civ. 6527 (DLC),
   2004 U.S. Dist. LEXIS 21429 (S.D.N.Y. Oct. 27, 2004)...........................................................4

*J.I. Case Co. v. Borak*, 377 U.S. 426 (1964) ......................................................................................5

*Landmen Partners Inc. v. Blackstone Grp. L.P.*, No. 08-CV-03601-HB-FM,
   2013 U.S. Dist. LEXIS 190908 (S.D.N.Y. Dec. 18, 2013).........................................................9

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998)............................................................9

*Lewis v. Newman*, 59 F.R.D. 525 (S.D.N.Y. 1973) .........................................................................13

*Ling v. Cantley & Sedacca, L.L.P.*, No. 04 Civ.4566 (HB),
   2006 WL 290477 (S.D.N.Y. Feb. 8, 2006) ..............................................................................16

*Luciano v. Olsten Corp.*, 109 F.3d 111 (2d Cir. 1997).....................................................................9

*Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................. *passim*

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04-8144,
   2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009).......................................................21

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)....................................................17

*Menkes v. Stolt-Nielsen S.A.*, No. 3:03CV00409, 2011 U.S. Dist. LEXIS 7066
   (D. Conn. Jan. 25, 2011) ..........................................................................................................16

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   246 F.R.D. 156 (S.D.N.Y. 2007)..............................................................................................16

*In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124
   (S.D.N.Y. 2008) ........................................................................................................................15

*Merryman v. Citigroup, Inc.*, No. 1:15-09185-CM, Order Awarding
   Attorneys' Fees and Reimbursement of Litigation Expenses,
   Dkt. No. 163 (S.D.N.Y. July 12, 2019).....................................................................................17

*In re Michael Milken & Assoc. Sec. Litig.*, 150 F.R.D. 46 (S.D.N.Y. 1993)..................................13

*Missouri v. Jenkins*, 491 U.S. 274 (1989)...................................................................................6, 9

*Mitland Raleigh-Durham v. Myers*, 840 F. Supp. 235 (S.D.N.Y. 1993) ........................................19

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 02 MDL 1484
(JFK) 2007 U.S. Dist. LEXIS 9450 (S.D.N.Y. Feb. 1, 2007) .................................................17

*In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465
(S.D.N.Y. 1998) ....................................................................................................................9, 10, 19

*Nilson v. York County*, 400 F. Supp. 2d 266 (D. Me. 2005) ...........................................................11

*In re Priceline.com, Inc. Sec. Litig.*, No. 00 Civ. 1884 (AVC),
2007 U.S. Dist. LEXIS 52538 (D. Conn. July 20, 2007) .......................................................18

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 985 F. Supp. 410
(S.D.N.Y. 1997) ...............................................................................................................3, 5, 7, 10

*In re Pub. Serv. Co.*, No. 91-0536M, 1992 U.S. Dist. LEXIS 16326
(S.D. Cal. July 28, 1992) .........................................................................................................17

*In re Ravisent Techs., Inc*. Sec. Litig., No. 00-CV-1014,
2005 U.S. Dist. LEXIS 6680 (E.D. Pa., 2005) .......................................................................17

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 Civ. 5587 (PKL) (RLE),
2003 U.S. Dist. LEXIS 8239 (S.D.N.Y. May 15, 2003) ........................................................16

*Savoie v. Merch. Bank*, 166 F.3d 456 (2d Cir. 1999) ....................................................................6

*In re Southeastern Milk Antitrust Litig.*, No. 2:07-cv-208,
2013 U.S. Dist. LEXIS 70167 (E.D. Tenn. May 17, 2013) ....................................................17

*Spann v. AOL Time Warner,* No. 02 Civ. 8238DLC, 2005 WL 1330937
(S.D.N.Y. June 7, 2005) ..........................................................................................................11

*In re Sterling & Foster, Inc. Sec. Litig.*, 238 F. Supp. 2d 480
(E.D.N.Y. 2002) .......................................................................................................................11

*Strougo v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003) ..........................................................16

*Taft v. Ackermans*, No. 02 Civ. 7951(PKL), 2007 WL 414493
(S.D.N.Y. Jan. 31, 2007) .........................................................................................................16

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP),
2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004)........................................................19

*In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008)................................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).........................................5

*The Pennsylvania Avenue Funds v. INYX Inc. et al.*, 1:08-cv-06857 (PKC),
    Final Order and Judgment, Dkt. No. 299 (S.D.N.Y. May 4, 2012) .........................................10

*The Pennsylvania Avenue Funds v. INYX Inc. et al.*, 1:08-cv-06857 (PKC),
    Transcript of Proceedings on May 4, 2012 (Dkt. No. 300).......................................................15

*In re Titanium Dioxide Antitrust Litig.*, No. 10-cv-00318,
    2013 U.S. Dist. LEXIS 176099 (D. Md. Dec. 13, 2013) .........................................................17

*In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-340,
    2009 U.S. Dist. LEXIS 133251 (D. Del. Apr. 23, 2009) ........................................................17

*In re Tyco Int'l, Ltd. Sec. Litig.*, 535 F. Supp. 2d 249 (D.N.H. 2007).........................................14

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp.
    160 (S.D.N.Y. 1989). ..............................................................................................................18

*In re Veeco Instrum. Sec. Litig.*, No. 05 MDL 01695 (CM),
    2007 U.S. Dist. LEXIS 85554 (S.D.N.Y. Nov. 7, 2007) ....................................................4, 6

*Wal-Mart Stores, Inc. v. U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ...........................................5

*In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985),
    *aff'd*, 798 F.2d 35 (2d Cir. 1986) ..........................................................................................13

In *re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) ....................................................................................20

*Zinman v. Avemco Corp.*, No. 75-1254, 1978 U.S. Dist. LEXIS 20079 ......................................17

## STATUTES AND RULES

15 U.S.C.S. § 78u-4 .........................................................................................................................2

Fᴇᴅ. R. Cɪᴠ. P. 23 ................................................................................................... *passim*

Pursuant to the July 30, 2019 Order Granting Preliminary Approval of Proposed Settlement and Providing for Notice to the Class (the "Preliminary Approval Order"; Dkt. No. 191), Lead Counsel, Brower Piven, A Professional Corporation ("Lead Counsel" or "Brower Piven"), respectfully submit this memorandum of law in support of their motion for an award of attorneys' fees of one-third (33 1/3%) of the Director Defendants' Contribution, as well as one-third (33 1/3%) of the Sillerman Contribution, or portions of it, if it is ever paid, and reimbursement of $248,214.01 in litigation and interim administration expenses incurred in the prosecution of this Action; and $10,000 as reimbursement to the Lead Plaintiff, Guevoura Fund Ltd. ("Lead Plaintiff" or "Guevoura") for the time certain of its directors and employees devoted to the prosecution of the Action.[1]

## I.   PRELIMINARY STATEMENT

This Action was prosecuted by Lead Counsel on behalf of Lead Plaintiff and Class on a fully contingent basis, and through their efforts, Lead Counsel have obtained a Settlement Fund for the benefit of the Class representing a very significant percentage of Class Members' most likely recoverable damages in this Action. This excellent result would not have been possible without the efforts of Lead Counsel who, despite the relentless opposition by the Director Defendants, devoted over three and a half years to the prosecution of this Action.  Through an extensive investigation and discovery process, Lead Counsel were able to sufficiently develop their case to engage in extensive, complex and difficult settlement negotiations with the Director Defendants. Without Lead Counsel's skill, advocacy and diligent efforts in the prosecution and

---

[1] Capitalized terms not defined herein shall have those meanings ascribed to them in the Stipulation and the Declaration of David A.P. Brower In Support of Lead Plaintiff's Motion for Final Approval of Class Notice, Final Approval of the Proposed Settlement, Final Approval of the Proposed Plan of Allocation, and Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses and Fees and Expenses of the Lead Plaintiff and Fees and Expenses of the Lead Plaintiff ("Brower Declaration").

settlement of Lead Plaintiff's claims, no recovery for the Class would have been obtained.

Lead Counsel are simultaneously submitting to the Court the Brower Declaration, which fully describes the history of this Action, the claims asserted, the efforts of Lead Counsel, the complexity and risks associated with this Action, the legal obstacles to Lead Plaintiff's success on the merits, and the negotiations leading to the Settlement. As such, Lead Counsel respectfully direct the Court's attention to the Brower Declaration and will refrain from repeating herein the matters contained in the Brower Declaration. This memorandum will focus on the legal and factual standards applicable to attorneys' fees and expense requests.

As compensation for their efforts on behalf of the Class, as detailed in the Brower Declaration, Lead Counsel respectfully request that the Court award attorneys' fees in the amount of one-third (33 1/3%) of the Director Defendants' Contribution and one-third (33 1/3%) of the Sillerman Contribution, or portions of it, if it is ever paid, which is less than Lead Counsel's lodestar of $2,272,905.25. In addition, Lead Counsel request reimbursement of the out-of-pocket expenses incurred by Lead Counsel and its specialist bankruptcy counsel, Lowenstein Sandler LLP ("Lowenstein") (Lead Counsel and Lowenstein collectively referred to herein as "Plaintiff's Counsel"), during the pendency of the Action in the combined amount of $248,214.01. Lead Counsel also request interest earned on their fee and reimbursement requests at the same rate as earned on the Settlement Fund from the date of the award until payment.

The percentage recovery method has been widely embraced by courts in this District, this Circuit and courts across the country as the best approach to calculating attorneys' fees. The Private Securities Litigation Reform Act of 1995 ("PSLRA")[2] has also indicated its preference for percentage analysis when awarding attorneys' fees in securities class actions. Additionally,

---

[2] The PSLRA states that, in class actions brought under federal securities law, "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff shall not exceed a reasonable percentage of the amount" recovered for the Class. 15 U.S.C. § 78u-4(a)(6).

courts also utilize a lodestar/multiplier analysis to award attorneys' fees or perform a "lodestar cross-check" to assess the reasonableness of a percentage fee request in cases, such as this one, where Lead Counsel incurred substantial time litigating the matter.  Under that analysis, where counsel assumes the risk of litigating a case on a contingency basis -- in this case for over three and a half years -- courts recognize that counsel is typically entitled to a substantial premium or "multiplier" of their lodestar submission.  *Goldberger v. Integrated Res., Inc*., 209 F.3d 43, 47 (2d Cir. 2000); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 985 F. Supp. 410, 414 (S.D.N.Y. 1997) ("Because counsel who rendered services were not being compensated for their work as it was being performed and because of the significant risk that they might never receive any compensation if the action was unsuccessful, courts have, when warranted, applied a multiplier to the lodestar to arrive at a fair contingent fee.").  Here the fee request represents *a negative multiplier* of Lead Counsel's lodestar because their lodestar is greater than the amount of the fee they are seeking.

Under either the percentage or lodestar/multiplier method of calculating fees, the ultimate objective is for the Court to arrive at an award that, in the Court's view, will fairly and reasonably compensate Plaintiff's Counsel for their successful efforts on behalf of the class.  The instant fee and reimbursement requests are premised on a number of factors, including the substantial result achieved for the Class, Plaintiff's Counsel vigorous and skillful prosecution of the Class' claims, and the numerous and substantial risks undertaken, on a wholly contingent basis, by Lead Counsel during the course of the litigation.  For the reasons cited herein and the facts detailed in the Brower Declaration, Lead Counsel respectfully submit that the fee request is fully justified under the applicable law, and the expenses Plaintiff's Counsel incurred were necessary and reasonable and should be reimbursed.  Further, following the dissemination of

over 10,998 copies of the Notice,[3] Lead Counsel have yet to receive an objection to the fee or reimbursement request (which is way below the expense amount disclosed in the Notice) by a member of the Class.[4]

## II.   LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES SHOULD BE GRANTED

### A.   Lead Counsel are Entitled to an Award of Attorneys' Fees and Reimbursement of Expenses from the Common Fund

It is well established that where an attorney prosecutes a suit that results in the creation of a fund for the benefit of a class, the costs of the litigation, including an award of reasonable attorneys' fees, should be recovered from the fund created by the litigation. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also In re Interpublic Sec. Litig.*, No. 03-1194, 2004 U.S. Dist. LEXIS 21429, at *30-*31 (S.D.N.Y. Oct. 27, 2004). This is known as the "equitable" or "common fund" doctrine. The Supreme Court has explained that the doctrine "allows a court to prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Boeing*, 444 U.S. at 478 (citations omitted); *see also In re Veeco Instrum. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85554, at *7 (S.D.N.Y. Nov. 7, 2007). "[A] traditional purpose of the common fund doctrine is to make 'fair and just allowances' to Lead Counsel." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (citing *Internal Imp. Fund Trustees v. Greenough*, 105 U.S. 527, 536 (1881)).

---

[3] *See* Declaration of Luiggy Segura Regarding (A) Mailing of Notice of Proposed Settlement of Class Action and Proof of Claim and Release Form; (B) Publication of Summary Notice; and (C) Report on Requests for Exclusion Received, dated October 9, 2019, the Court-appointed Claims Administrator in this case ("Segura Declaration" or "Segura Decl."), attached as Exhibit 1 to the Brower Declaration.

[4] The deadline for Class Members to file objections to the fee and reimbursement requests is November 12, 2019.

Courts have recognized that in addition to providing just compensation, awards of attorneys' fees from a common fund also serve to (1) encourage skilled counsel to represent, on a contingency basis, those who seek redress for damages inflicted on entire classes of persons, and (2) discourage future misconduct of a similar nature. *See, e.g.*, *Dolgow v. Anderson*, 43 F.R.D. 472, 481–84 (E.D.N.Y. 1968); *see also Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *27 (S.D.N.Y. Oct. 24, 2005) ("Private actions to redress real injuries . . . could not be sustained if Lead Counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class.").  Indeed, the Supreme Court has repeatedly emphasized that private securities actions, such as the instant action, provide a "'most effective weapon in the enforcement'" of the securities laws and are "'a necessary supplement to [SEC] action.'"  *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) ("This Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the [SEC].").

## B.    The Standard for Approval of Attorneys' Fees in the Second Circuit

As discussed above, courts traditionally have employed two methods for calculating reasonable attorneys' fees in securities class actions, the percentage-of-the-fund method and the lodestar method.  *Maley*, 186 F. Supp. 2d at 369.  Although the Second Circuit has held that courts may use either method when determining an award of attorneys' fees, "[t]he trend in this Circuit is toward the percentage method . . . which 'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of the litigation.'"  *Wal-Mart Stores, Inc. v. U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).

Thus, the Second Circuit has found the percentage method for calculating attorneys' fees in class actions to be a viable procedure in this Circuit. *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 49 (2d Cir. 2000) (citing *Savoie v. Merch. Bank*, 166 F.3d 456, 460 (2d Cir. 1999)).  Indeed, the *Goldberger* court held that as long as utilizing the percentage of recovery methodology does not produce an "unwarranted windfall[]" to counsel, there is "no need to compel district courts to undertake the 'cumbersome, enervating, and often surrealistic process' of lodestar computation."  *Id.* at 49-50 (citation omitted).[5]  The *Goldberger* court further concluded that the lodestar method is also a viable means for calculating attorneys' fees in this Circuit; and that even if a court used the percentage-of-the-fund method, the court is still "encourage[d]" to analyze counsel's lodestar "as a 'cross check' on the reasonableness of the requested percentage."  *Id.* at 50 (citation omitted); *see also Veeco*, 2007 U.S. Dist. LEXIS 85554, at *39 (employing percentage method with lodestar 'cross-check').  Thus, although in recent years the percentage-of-recovery method has become the prevailing method for awarding fees in common fund cases in this Circuit and throughout the United States, *see In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918, at *44-*46 n.3 (S.D.N.Y. July 27, 2007) (noting that the percentage method, in addition to being the trend of district courts in this Circuit, "has been expressly adopted in the vast majority of circuits"), either the percentage or lodestar/multiplier method may be applied by a court to determine an attorney fee award.

No matter which method is chosen -- the percentage method or the lodestar/multiplier method -- the fees awarded in common fund cases must be fair and reasonable under the

---

[5] While the Court of Appeals for the Second Circuit encourages use of the lodestar method as a "cross check," it has acknowledged that the lodestar method on its own "proved vexing" and resulted in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48-49; *Savoie*, 166 F.3d at 460 ("percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases").

circumstances of a particular case.  *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) (recognizing that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace).

###### C.     The Requested Fees Are Reasonable Under the Lodestar Method

Regardless of which of the recognized methods the Court applies, courts in the Second Circuit consider traditional criteria that reflect a reasonable fee in common fund cases, including: (i) the time and labor expended by counsel; (ii) the risks of the litigation; (iii) the magnitude and complexity of the litigation; (iv) the requested fee in relation to the settlement; (v) the quality of representation; and (vi) public policy considerations.  *Goldberger*, 209 F.3d at 50.  Lead Counsel respectfully submit that an analysis of these six *Goldberger* factors, as well as an analysis under the percentage-of-the-fund and lodestar methods, demonstrates that their fee request is reasonable and appropriate and should be approved by the Court in full.[6]

###### 1.     The Labor Dedicated Justifies the Attorneys' Fees Requested

The starting point for any lodestar analysis is the calculation of the lodestar -- which is "comprised of the amount of hours devoted by counsel multiplied by the normal, non-contingent hourly billing rate of counsel."  *Prudential*, 985 F. Supp. at 414.  In total, as set forth in the lodestar submissions attached to the Brower Declaration, Lead Counsel devoted 2955.55 hours to this Action.  Brower Decl. at ¶155.  Accordingly, the requested fee in this Action not only represents a reasonable percentage of the benefit obtained, but also represents a discount of the lodestar amount.  Brower Decl. at ¶158.

The Settlement now before the Court is the culmination of over three and a half years of extensive litigation and the many hours of hard work by Plaintiff's Counsel.  Lead Counsel

---

[6] Lead Counsel are providing the necessary information for the Court to perform its analysis using either the percentage-of-the-fund method or the loadstar/multiplier method.

secured the Settlement due to the exhaustive efforts they exerted in this matter including, *inter alia*: (i) conducting a factual investigation into the Class' claims that included a review and analysis of information obtained from various public sources; (ii) using the investigation to draft the Consolidated Amended Class Action Complaint (Dkt. No. 61); (iii) successfully opposing the motions to dismiss; (iv) certifying the Class; (v) completing extensive document discovery that ultimately involved the review and organization of tens of thousands of pages of documents produced by the Director Defendants and the various SFX entities, and over half a million of pages of documents provided in total from third-parties subpoenaed by Lead Counsel; (vi) developing an in-depth understanding of the complex and unique factual issues involved in this Action and in the bankruptcy proceedings; (vii) litigating various substantive motions in the SFX Bankruptcy Proceeding in Delaware Bankruptcy Court where Plaintiff's Counsel obtained valuable concessions as part of SFX's plan of reorganization; (viii) preserving and litigating the Class claims in the Sillerman Bankruptcy Proceedings; and (ix) consulting extensively with consultants and experts in the areas of damages and market efficiency. As noted above, Lead Counsel respectfully direct the Court to the Brower Declaration for the details of Plaintiff's Counsel's efforts.

The negotiations leading up to the Settlement also required exhaustive and accelerated efforts by Lead Counsel.  The parties engaged in extended and complicated arm's-length settlement negotiations in July 2017, not only with counsel for the Director Defendants, but with counsel for the SFX litigation Trustee and the Opt-Out Plaintiffs. Those efforts, however, were derailed by then defendant, Robert F.X. Sillerman ("Sillerman") being forced into involuntary bankruptcy.

Due to limited financial resources, including due to Sillerman being in bankruptcy and the wasting D&O insurance policies that had to pay for the global settlement, *see* Brower Decl.

¶124, reaching a settlement that would ensure a benefit to the Class required significant time, effort and ingenuity on behalf of all the parties.  Only after a second mediation with Magistrate Judge Ona T. Wang and extensive and complicated follow up arm's-length negotiations, which included bankruptcy counsel for Lead Counsel, the Director Defendants and Sillerman, was the Settlement finally reached on March 12, 2019.  *See* Brower Decl. at ¶¶72-73.[7]  Absent Lead Counsel's experience and skill in securities class action litigation, it would have been a virtually insurmountable task to complete the negotiations and necessary paperwork for a complex settlement of this type.

### 2.    The Rates Charged Are Reasonable

The second step in the lodestar analysis is to test the reasonableness of the current billing rates charged by plaintiff's counsel.[8]  In determining the propriety of the hourly rates charged by counsel in class actions, courts have continually held that the standard is the rate charged in the community where the services were performed for the type of service performed by counsel. *See, e.g., Luciano v. Olsten Corp.*, 109 F.3d 111, 115-16 (2d Cir. 1997) ("The 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'") (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (appropriate rate in performing lodestar analysis is "the rate 'normally charged

---

[7] Furthermore, Lead Counsel will continue to perform legal work on behalf of the Class should the Court approve the proposed Settlement.  Additional resources will be expended assisting Class Members with their Proofs of Claim and related inquiries and working with JND to ensure the smooth progression of claim processing and moving the Court for a final distribution order.

[8] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds.  *See, e.g., Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) ("an appropriate adjustment for delay in payment" by applying "current" rate is appropriate); *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (rates "should be 'current rather than historic'") (citation omitted); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) (current rates "should be applied in order to compensate for the delay in payment").

for similar work by attorneys of like skill in the area,' taking into account factors such as the experience of the attorney performing the work and the type of work performed") (quoting *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1098 (2d Cir. 1977)).

Lead Counsel's rates are entirely reasonable and courts in this Circuit have repeatedly approved attorneys' fees for Lead Counsel here based on their billing rates.  *See, e.g.*, *In re Cnova N.V. Sec. Litig.*, No. 1:16-00444, Final Judgment and Order of Dismissal, Dkt. No. 148 (S.D.N.Y. Mar. 20, 2018) (Swain, J.); *Landmen Partners Inc. v. Blackstone Grp. L.P.*, No. 08-CV-03601-HB-FM, 2013 U.S. Dist. LEXIS 190908, at *9 (S.D.N.Y. Dec. 18, 2013) (Baer, J.); *The Pennsylvania Avenue Funds v. INYX Inc. et al.*, 1:08-cv-06857 (PKC), Final Order and Judgment, Dkt. No. 299 (S.D.N.Y. May 4, 2012) (Castel, J.); *Freudenberg v. E*Trade Fin. Corp.*, No. 07-8538, Final Judgment and Order of Dismissal, Dkt. No. 154 (S.D.N.Y. Oct. 22, 2012) (Oetken, J.).  *see also* Exhibit 5 to Appendix (Declaration of Professor Geoffrey P. Miller, dated December 15, 2017, at ¶¶58-76, submitted in *In re Cnova N.V. Sec. Litig.*).  Further, courts in this District and around the country have repeatedly found rates charged by Lead Counsel in class actions that are comparable to this Action to be reasonable given the nature of such work and the risks associated with financing class actions for long periods of time -- in this case, over three and a half years.

### 3.    The Application of a Negative Multiplier

Courts have continually recognized that, in instances where a lodestar analysis is employed to calculate attorneys' fees or used as a "cross check" for a percentage of recovery analysis, counsel may be entitled to a "multiplier" of their lodestar rate to compensate them for the risk assumed by them, the quality of their work and the result achieved for the class.[9]

---

[9] *See, e.g.*, *Goldberger*, 209 F.3d at 54 ("We have historically labeled the risk of success as 'perhaps the foremost' factor to be considered in determining whether to award an enhancement.") (citation omitted); *see also Prudential*, 985 F. Supp. at 414.

Accordingly, multipliers of between three and four times a successful plaintiff's counsel's lodestar have been routinely awarded in this Circuit. *See, e.g.*, *Maley*, 186 F. Supp. 2d at 369 (awarding fee equal to 4.65 multiplier, which was "well within range awarded by courts in this Circuit and courts throughout the country"); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (approving multiplier of 3.97 and noting that "'[i]n recent years multipliers of between 3 and 4.5 have become common'") (citation omitted); *EVCI*, 2007 U.S. Dist. LEXIS 57918, at *56 (2.48 multiplier "is within the range found to be reasonable").

Here, Lead Counsel devoted 2,955.55 hours to this Action, equaling $2,272,905.25 in billable time. As a result, Lead Counsel's request amounts to less than the straight time spent on this case, without any augmentation, for Lead Counsel's time alone. Brower Decl. at ¶¶155. In other words, Lead Counsel's request for attorneys' fees reflects a discount on the time Lead Counsel actually spent litigating the matter and requires the application of a ***negative multiplier*** to the lodestar. Further, as detailed Exhibit 4 to the Appendix, Lowenstein reports devoting significant time to this case on a contingent basis. If their time were included, the combined lodestar of Plaintiff's Counsel would be a very significant negative multiplier of the maximum award Lead Counsel is requesting for all work expended on behalf of the Lead Plaintiff and the Class in this Action. This fact militates very in favor of the reasonableness of the fee request, particularly in light of the fact that courts generally grant fees with positive multipliers to reflect the complexity and risks undertaken by class counsel.

Courts have repeatedly recognized that the reasonableness of the fee request under the percentage method is reinforced where, as here, "the percentage fee would represent a negative multiplier of the lodestar." *In re Blech Sec. Litig.*, 94 CIV. 7696 (RWS), 2000 WL 661680, at *5 (S.D.N.Y. May 19, 2000); *see also Spann v. AOL Time Warner,* No. 02 Civ. 8238DLC, 2005 WL 1330937, at *8-*9 (S.D.N.Y. June 7, 2005) (approving attorneys' fees of one-third of the

settlement fund where "Lead Counsel's lodestar amount exceed[ed] by several thousand dollars the amount of fees requested as part of the Settlement Agreement").  Indeed, "the fact that any reasonable fee would necessarily represent a negative multiplier of the lodestar supports an award at the higher end of the spectrum."  *In re Sterling & Foster, Inc. Sec. Litig.*, 238 F. Supp. 2d 480, 490 (E.D.N.Y. 2002) (quoting *Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*, No. 96 Civ. 0583, 2002 WL 1315603, at *2 (S.D.N.Y. June 17, 2002)); *Nilson v. York County*, 400 F. Supp. 2d 266, 271 (D. Me. 2005) ("When the lodestar cross-check shows that the percentage fee is lower than the fee the lawyers have accrued on a time-and-service basis, it is relatively easy to support a percentage-based fee.").  Thus, the lodestar approach also clearly demonstrates that Plaintiff's Counsel's fee request is reasonable.

### D.    Lead Counsel's Requested Fee Percentage Is Reasonable Under Percentage Method

As demonstrated below, the fee request here is fully supported by the *Grinnell*/*Goldberger* factors.

#### 1.    The Time and Labor Expended Are Reasonable

As is detailed above and in the Brower Declaration, Lead Counsel expended substantial time and effort to bring this litigation to a successful resolution.  In total, Lead Counsel have spent 2,955.55 hours litigating this matter, resulting in a total lodestar of $2,727,905.25.  Brower Decl. at ¶155.  Lead Counsel's outside bankruptcy counsel also devoted a substantial amount of time to the bankruptcy issues in this case. Given the significant amount of time devoted in zealously prosecuting this Action, the "time and labor expended by counsel" clearly supports the fees requested.

#### 2.    The Magnitude and Complexity Of This Litigation Support the Fee Requested

This case, like virtually all securities actions, was inherently complex.  *See In re Gilat*

*Satellite Networks, Ltd.*, CV-02-1510 (CPS), 2007 U.S. Dist. LEXIS 29062, at *36 (E.D.N.Y. Apr. 19, 2007) ("Securities class actions are generally complex and expensive to litigate."); *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 234 (S.D.N.Y. 2005) (evaluating complexity of securities class actions in comparison to other securities fraud class actions). Furthermore, absent the Settlement, Class Members may not benefit from a recovery, if any, for years.  When taking into consideration the risks of a trial and the inevitable appeals that would have followed, *see In re Bristol-Myers Squibb*, 361 F. Supp. 2d at 234, coupled with the bankruptcy issues and proceedings that this case was subject to, *see Maley*, 186 F. Supp. 2d at 360 (discussing the imminent bankruptcy as part of the complexity of the litigation analysis for the award of attorneys' fees);  *In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, 2009 U.S. Dist. LEXIS 19210, at *67 (E.D. La. Mar. 2, 2009) ("This case was further complicated by OCA's bankruptcy, for which Lead Counsel had to retain separate bankruptcy counsel"); *In re Delphi Corp. Sec.*, 248 F.R.D. 483, 503 (E.D. Mich. 2008); *In re Harrah's Entm't*, No.95-3925, 1998 U.S. Dist. LEXIS 18774, at *15-*16 (E.D. La. Nov. 24, 1998), Lead Counsel's ability to tackle a case of substantial magnitude and complexity and produce a highly beneficial result for the Class fully supports the requested fee.

### 3.    The Substantial Risks to Lead Plaintiff's Recovery Fully Support the Fee Requested By Lead Counsel

The Second Circuit has identified "the risk of success as 'perhaps the foremost' factor to be considered in determining [a reasonable award of attorneys' fees]." *Goldberger*, 209 F.3d at 54; *In re Telik*, 576 F. Supp. 2d at 592 ("Courts have repeatedly recognized 'that the risk of the litigation' is a pivotal factor in assessing the appropriate attorneys' fees to award to Lead Counsel in class actions.").  Here, Lead Counsel faced significant risks to obtaining a recovery for the Class or collecting upon such a recovery if the Action continued, and, thus, receive no payment for their efforts.

13

### a.      The Risk to Establishing Liability and Damages

As in any securities litigation, Lead Plaintiff faced risks at later stages of litigation, including at trial and on appeal of prevailing on his securities fraud claims.  *See In re Michael Milken & Assoc. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (when evaluating securities class action settlements, courts have long recognized such litigation to be "'notably difficult and notoriously uncertain'") (quoting *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973)). Further, while Lead Counsel were confident that they would ultimately prevail on the merits, the risk of non-collectability of a judgment greater than the Settlement was very real.

### b.      The Risk of Contingent Litigation

Lead Counsel also undertook this Action over three and a half years ago on an entirely contingent fee basis, assuming the risks of surviving dispositive motions, obtaining class certification, proving falsity, scienter, loss causation and damages, and litigating the Action through trial and likely appeals.  *See In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 432-33 (S.D.N.Y. 2001) ("[It is] appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award.") (citing *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 236 (2d Cir. 1987)); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("Numerous cases have recognized that the attorneys' contingent fee risk is an important factor in determining the fee award.").

Lead Counsel understood from the outset that they were embarking on a complex, and potentially expensive and lengthy litigation, which would require the investment of thousands of hours of attorney time, with no guarantee of ever being compensated for their investment of such time and money.  Lead Counsel understood that the Director Defendant, in particular Sillerman, would (and, in fact, did) vigorously defend this Action, Brower Decl. at ¶¶143-47, as well as his rights in the Bankruptcy Court.

In undertaking this risk, Lead Counsel were obligated to ensure that sufficient attorney resources were dedicated to the prosecution of this Action.  Moreover, Lead Counsel has not been compensated for any of their time or expenses during the time the Action has been pending. Despite the risk of receiving no payment if their efforts proved futile, Lead Counsel alone advanced over two million dollars of time and expenses in litigating the Class' claims. *See In re Tyco Int'l, Ltd. Sec. Litig.*, 535 F. Supp. 2d at 268 (noting that "had [Lead Counsel] lost on summary judgment or fallen short of establishing liability at trial, they would have lost the [hundreds of thousands] of dollars in expenses and all of the attorney time that they collectively invested in the case"); *Maley*, 186 F. Supp. 2d at 372 ("Class Counsel undertook a substantial risk in absolute non-payment in prosecuting this action, for which they should be adequately compensated.").

In addition to advancing litigation expenses and paying their not insubstantial overhead required to provide the Class with the services of up-to-date modern law firms, Lead Counsel was mindful that in numerous cases, class counsel working on a contingent basis, such as this, have expended thousands of hours only to receive no compensation.  There have been many hard-fought lawsuits where, because of (i) the discovery of facts unknown when the case was commenced, (ii) changes in the law while the case was pending, or (iii) decisions of judges or juries following a trial on the merits, that excellent professional efforts of members of the plaintiffs' bar produced no fee for counsel.  Losses such as these are exceedingly expensive. Thus, there existed a demonstrable risk that Plaintiff's Counsel would invest substantial efforts and receive nothing, and this factor counsels strongly in favor of the fee request.

### 4. The Quality Of Lead Counsel's Representation Of the Class Supports The Fee Requested

In evaluating the "quality of representation," courts in the Second Circuit have "review[ed] the recovery obtained and the backgrounds of the lawyers involved in the lawsuit."

15

*In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 141 (S.D.N.Y. 2008).  Lead Counsel, Brower Piven, practices extensively in the highly complex field of representative shareholder and securities litigation and has successfully litigated these types of actions in courts throughout the country.  The experience of Lead Counsel is set forth in Exhibit 3 to the Appendix.  Although circumstances in this case significantly changed during its course due to the SFX and Sillerman bankruptcies, Lead Counsel continued to vigorously prosecute the case even as the sources of recovery dwindled.  In a similarly difficult case, United States District Judge P. Kevin Castel of this Court remarked regarding Brower Piven where the court awarded fees in the amount of one-third of the Class recovery:

> I have considered the experience of plaintiff's counsel.  Mr. Brower of Brower Piven has done a remarkable job in this case.  It has not been easy going for him, it hasn't been easy going for the defendants, nor has this been the easiest case for the Court.  But he has stayed with it, and I suspect that it may have been the kind of case that there may have been days and hours where class counsel wondered whether from a personal standpoint the best decision was to take on the case.  I can readily understand why that might be the case; yet, as a fiduciary having signed on, there is, thereafter, no choice but to bring the ship into port one way or another and ride it to conclusion, and Mr. Brower has done that.

*The Pennsylvania Avenue Funds v. INYX Inc. et al.*, 1:08-cv-06857 (PKC), Transcript of Proceedings on May 4, 2012 (Dkt. No. 300).  Lead Counsel pressed this case no less vigorously.

Additionally, the attorneys who worked on this case at Lowenstein are highly experienced bankruptcy specialists, whose qualifications are detailed in Exhibit 4 to the Appendix, and their involvement on behalf of the Lead Plaintiff was necessary to lead Plaintiff's ability to successfully navigate the SFX and Sillerman Bankruptcy Proceedings.

**5.    The Fee Requested Is Fair In Relation to the Settlement Amount**

Courts reach their conclusion whether a particular percentage fee award is reasonable based either on a comparison to fee awards in comparable cases, *see, e.g., Taft v. Ackermans*, No. 02 Civ. 7951(PKL), 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007), or "based on the unique

16

circumstances of each case." *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 174 (S.D.N.Y. 2007) (citations and quotations omitted); *see also, e.g., Ling v. Cantley & Sedacca, L.L.P.*, No. 04 Civ.4566 (HB), 2006 WL 290477, at *3 (S.D.N.Y. Feb. 8, 2006) (stating that relationship of fee request to settlement should be "based on the characteristics of [each] particular case").

The one-third percentage of the recovery fee award that Lead Counsel requests here is consistent with attorneys' fees awarded to successful plaintiffs' counsel in other federal securities class actions in this Circuit, *see, e.g., China Sunergy*, 2011 U.S. Dist. LEXIS 53007, at *16 ("the requested attorneys' fees of 33 and 1/3% are reasonable. The compensation requested was negotiated with the Lead Plaintiff and is within the range of percentage fees awarded in the Second Circuit.") (citing other cases in this Circuit),[10] and in other Circuits.[11] Indeed, this Court

---

[10] The following is a non-comprehensive list of *reported* cases in this Circuit where courts awarded attorneys' fees of one-third (33.33%) or more of the common fund recovered to plaintiffs' counsel plus expenses in federal securities law class actions. *See, e.g., In re Giant Interactive Group, Inc.*, 279 F.R.D. at 166; *Fogarazzo*, 2011 U.S. Dist. LEXIS 17747, at *1; *Menkes v. Stolt-Nielsen S.A.*, No. 3:03CV00409, 2011 U.S. Dist. LEXIS 7066, at *14 (D. Conn. Jan. 25, 2011); *In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009); *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 Civ. 5587 (PKL) (RLE), 2003 U.S. Dist. LEXIS 8239, at *6 (S.D.N.Y. May 15, 2003); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003); *Dubin v. E.F. Hutton Group, Inc.*, 878 F. Supp. 616, 626 (S.D.N.Y. 1995); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993).

[11] The following is a non-comprehensive list of cases in other Circuits where courts awarded attorneys' fees of one-third (33.33%) or more of the common fund recovered to plaintiffs' counsel plus expenses in federal securities law class actions. *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000); *In re Southeastern Milk Antitrust Litig.*, No. 2:07-cv-208, 2013 U.S. Dist. LEXIS 70167, at *31 (E.D. Tenn. May 17, 2013) (33 1/3%, totaling over $52 million); *In re Titanium Dioxide Antitrust Litig.*, No. 10-cv-00318, 2013 U.S. Dist. LEXIS 176099, at *8 (D. Md. Dec. 13, 2013) (33 1/3% on $163.5 million); *In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-340, 2009 U.S. Dist. LEXIS 133251, at *17 (D. Del. Apr. 23, 2009) (33 1/3% fee from $250 million settlement fund); *In re Ravisent Techs., Inc. Sec. Litig.*, No. 00-CV-1014, 2005 U.S. Dist. LEXIS 6680, at *35, *51 (E.D. Pa. Apr. 18, 2005); *In re Heritage Bond Litig*, 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627, at *61 (C.D. Cal. June 10, 2005); *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484, 497-98 (E.D Pa. 2003); *In re Gen. Instru. Sec. Litig.*, 209 F. Supp. 2d 423, 431-34 (E.D. Pa. 2001); *In re Pub. Serv. Co.*, No. 91-0536M, 1992 U.S. Dist. LEXIS 16326, at *21 (S.D. Cal. July 28, 1992); *Antonopulos v. N.*

has previously granted one-third of the recovery in attorneys' fees in securities class actions. *See, e.g.*, *Merryman v. Citigroup, Inc.*, No. 1:15-09185-CM, Order Awarding Attorneys' Fees and Reimbursement of Litigation Expenses, Dkt. No. 163 (S.D.N.Y. July 12, 2019) (33 1/3%); *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 U.S. Dist. LEXIS 177175, at *46 (S.D.N.Y. Dec. 19, 2014) (33 1/3%); *City of Providence v. Aéropostale, Inc.*, No. 11-7132, 2014 U.S. Dist. LEXIS 64517, at *39 (S.D.N.Y. May 9, 2014) (33%); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) (33 1/3%).

### 6.    Public Policy Considerations Fully Support the Fee Requested

The Second Circuit has also held that "public policy considerations" should be afforded weight when determining the fee awarded to plaintiffs' counsel in class actions.  *See Flag Telecom*, 2010 U.S. Dist. LEXIS 119702, at *83 ("[p]ublic policy concerns favor the award of reasonable attorneys' fees in class action securities litigation); *ML Funds*, 2007 U.S. Dist. LEXIS 9450, at *69 (same). Private lawsuits, such as this, serve to further the objective of the federal securities laws to protect investors and consumers against fraud and other deceptive practices. *Eltman v. Grandma Lee's, Inc.*, No. 82 Civ. 1912, 1986 U.S. Dist. LEXIS 24902, at *25 (E.D.N.Y. May 28, 1986); *see also Bateman Eichler*, 472 U.S. at 310 (holding that lawsuits brought by investors provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action'") (citations omitted); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered.").

The Second Circuit has taken into account the social and economic value of class actions

---

*Am. Thoroughbreds, Inc.*, No. 87-0979G (CM), 1991 U.S. Dist. LEXIS 12579, at *8-*9 (S.D. Cal. May 6, 1991) (awarding one-third fee plus expenses in securities class action); *Howes v. Atkins*, 668 F. Supp. 1021, 1027 (E.D. Ky. 1987) (40%); *Zinman v. Avemco Corp.*, No. 75-1254, 1978 U.S. Dist. LEXIS 20079, at *4-*5 (E.D. Pa. Jan. 18, 1978) (50%).

and the need to encourage counsel to undertake such litigation. *See, e.g., Alpine Pharmacy v. Chas. Pfizer & Co., Inc.*, 481 F.2d 1045, 1050 (2d Cir. 1973). As a practical matter, class actions can be maintained only if competent counsel can be obtained to prosecute them. This will occur if courts award reasonable and adequate compensation for their services where successful results are achieved. As former Chief Judge Brieant stated in *Union Carbide*, 724 F. Supp. at 169:

> [a] large segment of the public might be denied a remedy for violations of the securities laws if contingent fees awarded by the courts did not fairly compensate counsel for the services provided and the risks undertaken.

Here, the Settlement was achieved despite the absence of any assistance from the government agencies. Thus, Lead Counsel's willingness to assume the risks of this litigation resulted in the *only* recovery for the Class. *See In re Priceline.com, Inc. Sec. Litig.*, No. 00 Civ. 1884 (AVC), 2007 U.S. Dist. LEXIS 52538, at *17 (D. Conn. July 20, 2007) ("the award of the percentage requested here will encourage enforcement of the securities laws and support attorneys' decisions to take these types of cases on a contingent fee basis").

Indeed, for most Class Members, this Action was the only hope of obtaining compensation for the losses they suffered as a result of the allegations here, so a class action was the most efficient manner in which to prosecute the claims of Class Members. Thus, public policy favors granting Lead Counsel's request for fees.

### E. Absence of Objections to the Fee Request Demonstrates it is Reasonable

As discussed in the accompanying Brower Declaration, 10,988 copies of the Notice were disseminated to potential Class members and the Publication Notice was published on three staggered occasions over the leading national business newswires. The notice described the fee request in detail. The Notice also indicated that all Class Members had the right to object to the fee request and when and how to lodge any such objection. The deadline for objections is November 12, 2019. To date, no object to the fee request has been received. The lack of

objections, in this day and age, is not only remarkable, but militates in favor of approval of the Fees as requested.  *See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 478 (S.D.N.Y. 1998) (*"[i]n litigation involving a large class, it would be 'extremely unusual' not to encounter objections."*).

## III.     THE REQUEST FOR REIMBURSEMENT OF EXPENSES IS REASONABLE

Plaintiff's Counsel also request reimbursement of their out-of-pocket expenses, in the amount of $248,213.01, incurred in connection with the prosecution of the Action on behalf of the Class.  It is well established that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class.  *See, e.g., Teachers' Ret. Sys.*, 2004 WL 1087261, at *6; *Am. Bank Note*, 127 F. Supp. 2d at 430.  Particular costs are compensable if they are of the type normally billed by attorneys to paying clients.  *E.g., Mitland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993).  Courts have awarded such expenses so long as counsel's documentation of them is "adequate."  *NASDAQ*, 187 F.R.D. at 489.

Lead Counsel's expenses were spent on Lead Plaintiff's investigation, experts, photocopying of documents, on-line research, messenger services, postage, express mail, the retainer for bankruptcy counsel, Lowenstein, discovery, travel, including the requisite international travel for the representative of Guevoura to appear for its class deposition, and other incidental expenses directly related to the prosecution and settlement of this Action. Brower Decl. at ¶165; Exhibit 4 to the Appendix.  That amount also includes the fees and expenses charged by Lead Plaintiff's financial experts and the fees and expenses of Judge Layn R. Phillips, the private mediator used by the parties on April 18, 2017.  Finally, the expenses requested for reimbursement also include the interim charges by JND, the Court appointed Claims Administrator for $46,495.42.  These expenses are of the type that law firms typically bill to their clients.  *See In re Independent Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180,

183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients.") (internal quotation marks omitted). The items of out-of-pocket expense listed by Lowenstein, *see* Appendix, Ex. 4, are similarly the types of expenses customarily incurred by counsel representing clients in the bankruptcy courts.

Notably, although the Notice indicated Lead Counsel would seek reimbursement of expenses in an amount not to exceed $850,000, and the reimbursement request is very significantly below that amount, to date, no objections have been received to the reimbursement request.

Based upon the foregoing, and the matters set for tin the brower Declaration, Lead Counsel respectfully submit that the requested reimbursement of expenses in the amount of $248,213.01 is reasonable and should be granted.

## IV.    LEAD PLAINTIFF'S REQUEST FOR REIMBURSEMENT OF ITS TIME IS REASONABLE

Court have found that the PSLRA permits courts to award lead plaintiffs in federal securities actions reimbursement for their time devoted to participating in and directing the litigation on behalf of the class.   Indeed, important policy considerations to encourage enforcement of the federal securities laws by shareholders underlie these awards:

> In granting compensatory awards to the representative plaintiff in PSLRA class actions, courts consider the circumstances, including the personal risks incurred by the plaintiff in becoming a lead plaintiff, the time and effort expended by that plaintiff in prosecuting the litigation, any other burdens sustained by that plaintiff in lending himself or herself to prosecuting the claim, and the ultimate recovery. Furthermore, courts consider not only the efforts of the representative plaintiffs in pursuing claims, but also the important policy role they play in the enforcement of the federal securities laws on behalf of persons other than themselves. Such enforcement is vital because if there were no individual shareholders willing to step forward and pursue a claim on behalf of other investors, many violations of law might go unprosecuted.

*In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (citations omitted).

Thus, as this Court has previously found, time spent by the lead plaintiff/class representative in managing the case is properly reimbursable from the settlement amount recovered. *See, e.g.*, *City of Providence v. Aéropostale, Inc.*, No. 11-7132, 2014 U.S. Dist. LEXIS 64517, at *56 (S.D.N.Y. May 9, 2014) (awarding $11,235.04 for Lead Plaintiff for its lost wages and expenses); *In re Flag Telecom Holdings*, No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702, at *92 (S.D.N.Y. Nov. 5, 2010) (awarded to Lead Plaintiffs for their services in prosecuting the Action in the amounts of $100,000 for one and $5,000 for the other); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04-8144, 2009 U.S. Dist. LEXIS 120953, at *62 (S.D.N.Y. Dec. 23, 2009) (awarding the Ohio Plaintiffs $70,000 and the New Jersey Plaintiffs $144,657.14 as compensation for their reasonable costs and expenses).

The Notice informed the Class that Lead Plaintiff may seek an award of reasonable costs and expenses related to its representation of the Class. Lead Plaintiff has now submitted a declaration from Joanne Sene, director and employee of Guevoura attesting to the reasonable time that she and Jeremy Boujnah, also a director, spent on behalf of the Class performing tasks such as reviewing pleadings and documents, gathering documentation in response to discovery requests, being deposed by the Director Defendants, and discussing the case and the proposed Settlement with Lead Counsel. *See* Exhibit 6 to the Appendix.  Based on the approximate amount of time devoted to this Action by directors and employees of the Lead Plaintiff, Guevoura seeks $10,000 in reimbursement for their time.

Lead Counsel submits that amount requested is reasonable and, indeed, modest compared to awards made to lead plaintiffs in other PSLRA cases, and should be granted.

## V.    CONCLUSION

For the reasons set forth herein and in the Brower Declaration incorporated herein by reference, Lead Counsel respectfully request that the Court approve and enter an order for: (i) an

award of attorneys' fees in the amount of one third (33 1/3%) of the Director Defendants'

Contribution and one third (33 1/3%) of the Sillerman Contribution (or portions of it, if it is ever

paid),; (ii) reimbursement of litigation expenses in the amount of $248,214.01; (iii) any interest

earned on those amounts at the same rate earned by the Settlement Fund from the date of the

award to the date of payment; and (iv) an award to Lead Plaintiff of 10,000.

Dated:  October 11, 2019                    **BROWER PIVEN**
                                              **A Professional Corporation**

                                            _/s/ David A.P. Brower_
                                            David A.P. Brower
                                            136 Madison Avenue, 5th Floor
                                            New York, NY 10016
                                            T: (212) 501-9000
                                            F: (212) 501-0300
                                            Email: brower@browerpiven.com

                                            **_Counsel for Lead Plaintiff and the Class_**

23

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2019, I served true and correct copies of the foregoing Lead Plaintiff's Memorandum in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses on all counsel by causing copies to be sent by the ECF system.

<em>/s/ David A.P. Brower</em><br>
David A.P. Brower